## STATE OF IOWA V. D. P. MINARD, Appellant.

**Evidence:** ABORTION. A conviction of murder while attempting to commit an abortion is sustained by evidence that defendant was the suitor of the deceased, that she was pregnant, that defendant was alone with her for several hours about two days before her death, and that when he left her, her clothes and the sheets of the bed where she was were covered with blood, that there was a wound in her womb which if inflicted before her death would have been fatal, that it was made before death, and that her death occurred about the time to be expected if the act was done while the defendant was with her.

**Escape.** Evidence that the defendant left the funeral procession before it reached the cemetery because of a report that he was to be charged with the death of deceased, and remained away for a week, is admissible, though he returned voluntarily and surrendered.

**Practice.** Where the testimony of a witness was taken at his house
  by consent of defendant, in the presence of his attorney, and later
  read to the jury without objection, it cannot be afterwards urged
  that the testimony was taken in defendant's absence.

*Appeal from Calhoun District Court.*—HON. S. M.
WEAVER, Judge.

WEDNESDAY, DECEMBER 11, 1895.

The defendant was indicted, tried, and convicted
of the crime of murder in the second degree, and he
appeals.—*Affirmed.*

*O. J. Jolley* for appellant.

*Milton Remley*, attorney general, for the state.

Rothrock, J.—I. It was charged in the indict-
ment, in substance, that the crime of murder in the
second degree was committed by the defendant by
inserting an instrument in the womb of one Rhoda
Ayres, a pregnant woman, with the intent to commit
an abortion, and that by the use of said instrument he
inflicted within her body a mortal wound, from which
she died on the first day of August, 1894; and there is
the usual statutory averment that it was not necessary
to cause or produce a miscarriage and abortion to save
the life of said Rhoda Ayres. The felonious act was
alleged to have been committed on the thirtieth day of
July, 1894. It is conceded that Rhoda Ayres
died on the first day of August of that year. She
was a young woman, who never was married,
and for about two months before her death she lived
with and worked for one Mrs. Copper, who kept a
boarding house in Lake City, in Calhoun county.
The defendant is a single man, and for some
time before the death of the young woman he
was her suitor, and it was understood by their

friends that they were engaged to be married. The woman complained of not being well while she was in the employ of Mrs. Copper, and she was taken quite sick about noon on the thirtieth day of July, 1894, and went to her bed in her room, and remained there until 6 o'clock in the evening, when she was removed to another chamber, and a physician was called, who prescribed for her, and on the next morning she was removed to the home of one Hutchinson, her brother-in-law, where she died on the first day of August. The defendant appeared at the home of Mrs. Copper about 8 o'clock in the evening of the day the young woman was taken sick, and remained almost constantly in her room until 1 or 2 o'clock in the night. He was alone with her for the greater part of that time. Between 9 and 10 o'clock he called Mrs. Copper, and he then went for a physician, and returned with him. The physician remained but a short time, and Mrs. Copper retired to her own room. The defendant was alone with the sick woman until 1 or 2 o'clock in the night, when he called Mrs. Copper, saying he was going home. Mrs. Copper went to the room, and in her testimony at the trial she described the situation at the time as follows: "I found her very sick. She was in a terrible condition. I found the bed and clothes all blood, and there had been blood in the wash bowl and in the vessel." In another part of her testimony she stated that "her clothes and both the sheets were covered with blood; that is, the most of them." After the death of Miss Ayres a post mortem examination was had in the presence of several physicians. The womb of the deceased was removed from the body. Before its removal it was found that it had been punctured by a blunt instrument, and that the hole made in it was, as one of the physicians described it, about the diameter of a dime. All of them testified that it was large enough to insert a finger in and through it, and

one stated that it was large enough to push two fingers through it. It was so located that it could have been made by thrusting the instrument into the womb. There is no dispute that, if the wound was inflicted before death, it was fatal, and the deceased expired at about the time to be expected if the act was done on the night on which defendant was alone with her in her room. The facts above stated are practically undisputed, and it will be readily seen therefrom that the evidence upon which the conviction was had was largely of a circumstantial character. No one claims to have seen the defendant perform the act, and, aside from the condition of the room after the defendant had been for several hours alone with the sick woman, there was no direct evidence of his agency in the matter. The trial consumed several days and the record shows that it was conducted on both sides with marked skill and ability; and we may say here that, although many objections were made and exceptions taken to rulings on the admission and rejection of evidence, a careful examination of the whole record discloses no error in any of these rulings. It is unnecessary to set out these objections. The defendant, during the trial, was awarded by the court everything to which he was entitled, and there is no real objection made by the counsel for the defendant to the instructions given to the jury by the court. As we have said, the defendant was ably represented on the trial, and the case is well presented in this court, and no additional instructions to the jury were requested by the defendant's counsel.

II. At the close of the introduction of the evidence in behalf of the state, the defendant's counsel moved the court to direct the jury to return a verdict for the defendant. There were several grounds stated in the motion, but they are all in the nature of an attack on the sufficiency of the evidence to authorize a verdict. Much is said in argument to the effect that

only a *prima facie* case was made, and that the evi-
dence did not show the defendant's guilt beyond a rea-
sonable doubt. We have no hesitancy in holding that
the motion was properly overruled. In addition to the
facts and evidence above set out, the physicians who
made the post mortem examination were practically
unanimous in the opinion that the womb was punct-
ured during the life of the deceased, and that she was
pregnant. We will not discuss the various reasons
given for this belief of the physicians. The principal
grounds of these opinions were that the womb was
enlarged to about twice the dimensions of that organ
in its normal condition, that the edges of the puncture
were ragged, and showed, by a collection of pus, that
the wound was inflicted before death, and that in the
interior of the womb were shreds of what is
usually called the "afterbirth." The deceased
was buried in a cemetery some ten miles away
from Lake City, where she died. The defendant went
with the funeral escort for about nine miles, when he
left the procession, and went to the town of Perry, in
this state, where he remained for a week or more. He
absented himself because of the report or rumor that
he was to be charged with the criminal act. This was
regarded by the court as what is known as an "escape,"
and his absence was so treated in the charge to the
jury. It may be admitted that, in view of the fact that
the defendant returned voluntarily, and surrendered
himself to the proper officer, his absence did not tend
strongly to show guilt, but the effect of his absence,
and the time and manner of his leaving, was a cir-
cumstance for the jury to consider in connection with
the other facts in the case.

III. The defendant presented a motion for the
continuance of the case. The motion was resisted, and
the court overruled it. This is made the ground of
complaint. The motion was based upon the absence of

the undertaker or funeral director who prepared the body for burial. It was claimed that his evidence would show that in preparing the body for interment he used what is known as a "trocar," and made an opening into the abdomen, by which he injected an embalming fluid, and the claim was made that this evidence would show that the puncture in the womb was made by the instrument used by the undertaker. The embalming process occurred before the post mortem examination. The absent witness was sick and unable to attend court. His residence is at Lake City, some distance from Rockwell, the county seat. After the defendant commenced the introduction of his evidence, the court, on its own motion, offered to allow the defendant an opportunity to go to the residence of Hopkins, the witness, and to take his testimony and read it to the jury. The defendant and the state accepted the offer, and the testimony was taken, and read to the jury. It is now objected that the testimony was taken in the absence of the defendant, and that it was his constitutional right to be present. The record does not show affirmatively that the defendant was not present at the taking of the testimony. It does show that the defendant's counsel and the county attorney were present, and that the testimony was taken at great length, and no objection was made by defendant or his counsel to the reading of the testimony to the jury. Under this state of facts, we think that the defendant waived any irregularity in the matter of taking and introducing the testimony, and it is not improper to say that the undertaker was one of the witnesses before the grand jury, and his name was indorsed on the indictment, and he was subpoenaed by the state, and his testimony tended to show that he did not puncture the womb with the trocar. There was no error in any ruling made in reference to this testimony.

We have disposed of every material question presented by this appeal. We have not discussed nor mentioned many features of the case which are disclosed in the evidence and presented in argument. It is impossible for counsel to present the evidence as it appeared on the trial. The physicians, while giving their testimony, used a human skeleton, and the uterus of the deceased was preserved, and both were used in illustrating and explaining the testimony of the physicians. As we have already indicated, the trial was conducted by the learned district judge with what appears to us to be the utmost fairness. He sentenced the defendant to imprisonment in the penitentiary for ten years, and we see no reason for disturbing the judgment, and it is *affirmed*.