## THE STATE OF NORTH DAKOTA v. JAMES J. REILLY.

(141 N. W. 720.)

**Information — murder — miscarriage — statute — crime — charging offense.**
   1. Information examined, and *held* to sufficiently state the offense of murder in the second degree under §§ 8789, 8796, and 8912, Rev. Codes, accomplished by the unintentional killing of a human being while engaged in the procurement of a miscarriage which was not necessary to save the life of the deceased.

**Trial judge — jury — regular panel — discharge — excuse jurors — talesmen — discretion — good cause.**
   2. A trial judge has no right to arbitrarily discharge a regular jury panel without cause, and summon another, for the trial of a particular case. He may, however, for reasons which, in the exercise of his discretion, he deems sufficient,

Note.—As to the competency of medical experts to give testimony on medical questions, see note in 66 Am. Dec. 235.

excuse jurors who have been summoned, although such action may necessitate the resort to talesmen or the summoning of an additional jury, and even though his reasons therefor are not such as would constitute a legal ground for the disqualification or exemption of such jurors.

**Jury — failing to appear — attachments — trial — impaneling jury.**

3. Where a panel has been properly summoned, but only a portion thereof appears at the trial, it is not necessary for the court to delay the impaneling of such jury or to postpone the trial, nor is it necessary for him to summon other jurors or to issue attachments for the absent jurors before proceeding with the impaneling of those who have appeared.

**Evidence — objection — "incompetent, irrelevant, and immaterial" — foundation — opinion — hypothetical questions.**

4. An objection that a question is "incompetent, irrelevant, and immaterial, no foundation laid and an improper question—improper to ask for the opinion of the doctor," does not sufficiently raise an objection that some of the witnesses on whose testimony the hypothetical question is based gave their own opinions in addition to reciting the facts of their observation.

**Evidence — medical expert — usage — questions — particular profession.**

5. The question: "Doctor, when another physician is called in a serious case, what is the custom of the first physician, what does he usually do? Tell him everything he knows about the case?" is not vulnerable to the objection that it is incompetent, irrelevant, and immaterial, no foundation laid, and not in any way binding upon the defendant. If there is a general usage applicable to a particular profession or business, parties who engage an individual in that profession are supposed to deal with him according to the usage, and the fact that there may be a local usage which is different from the general custom is not suggested by the objection.

**Witnesses — medical expert — medical knowledge — abortions — self-inflicted.**

6. Where a witness is allowed to testify fully on cross-examination to the fact as to whether a particular wound upon the uterus could have been inflicted by the deceased herself, it is not error to sustain an objection to a further question propounded upon such cross-examination as to whether it is not a fact within medical knowledge that intentional abortions are often performed by the use of needles, knitting needles, lead pencils, or other instruments.

**Evidence — repetition — cumulative — objection — error.**

7. Where matters are not in dispute, and are repeatedly testified to and fully conceded by the witnesses for the state, it is not necessarily reversible error in a criminal case to exclude questions which are merely cumulative and in affirmance of that which the state's witnesses freely admit.

**Cross-examination — extent of — court — discretion.**

8. The extent of cross-examination is within the sound discretion of the court.

**Physician — expert testimony — medical college — graduate — qualifications — proof of.**

9. It is not necessary that a person should be a graduate of a medical college or duly licensed to practise, in order that he may give testimony as an expert medical witness, where the witness testified that he was a physician and surgeon, had practised for eighteen years, and treated all kinds of ailments, sicknesses, and performed surgical work, as his qualification to so testify was sufficiently proved.

**Instructions — nonprejudicial — error.**

10. Various instructions examined, and, although not approved, *held* not to be prejudicial or to constitute reversible error.

**Instructions — witness — testifying falsely — disregard — corroboration.**

11. An instruction to the effect that "if any witness has been shown to have wilfully and knowingly testified falsely in regard to some material matter, you are at liberty to disregard his testimony entirely, unless corroborated by credible testimony," *held* to be a sufficiently definite statement of the law upon the subject.

**Instructions — jury — charge of court — exceptions — waiver.**

12. The trial judge said: "The court at this time will submit to the jury a written charge, but owing to the fact that there is but one counsel for the defense, and that his time has been thoroughly taken up during the progress of the trial so that he has not had proper and sufficient time to consider the charge in order to file his written exceptions thereto, which he would be required to do before the charge was given, the court will permit the defendant to consider the charge the same as if it had been delivered orally, and save to him his right to file exceptions thereto the same as if it were an oral charge." *Held:* that under §§ 9987, 9988, and 10078, Rev. Codes 1905, such exceptions were required by the order to be filed within twenty days, and that unless such exceptions were so filed the right thereto was waived. (Fisk, J., dissenting.)

**Evidence — sufficiency.**

13. Evidence examined, and *held* to sustain the verdict.

**New trial — newly discovered evidence — cumulative — refusal — error.**

14. It is not error to refuse to grant a new trial on the ground of newly discovered evidence where the evidence discovered is merely cumulative, and does not tend to make "a doubtful case clear."

**New trial — refusal — notice of intention — motion — assignments of error.**

15. The refusal of a new trial cannot be assigned as error where, as a matter of fact, no motion for the same was made or presented, but merely a notice served of an intention so to move. The same is true of assignments of error which relate merely to the sufficiency of the evidence.

On rehearing.

**Evidence — expert testimony — basis of.**

16. An expert may give an opinion based on the testimony of other witnesses that he has heard, in case there is no material conflict in the facts testified to by such other testimony.

**Oral charge — failure to file exceptions — curing omission.**

17. Although under §§ 9987, 9988, and 10078, Rev. Codes 1905, exceptions to an oral charge are required to be filed within twenty days, and unless so filed the right thereto will be waived, the omission will be deemed to have been cured where the record discloses that the court allowed an extension of time to settle the case on condition that exceptions to his charge be filed within a time limited, and that subsequently to such time the said court certified as a true and correct statement of the case, a statement which included the exceptions in question.

Opinion filed March 21, 1913. Affirmed on rehearing May 20, 1913.

Appeal from the District Court for Cavalier County, *Hon. A. G. Burr,* J., sitting by request.

Defendant was convicted of the crime of murder in the second degree, and appeals.

Affirmed.

*E. R. Sinkler* and *J. A. Heder,* for appellant.

The information in this case is defective, in that it contains mere recitals, instead of positive and direct allegations of fact, and defendant's demurrer should have been sustained. State v. Trueblood, 25 Ind. App. 437, 57 N. E. 975; Bassett v. State, 41 Ind. 303; State v. McIntyre, 19 Minn. 93, Gil. 65; State v. Belyea, 9 N. D. 353, 83 N. W. 1.

The burden of proof was upon the state to show that the abortion or miscarriage was not necessary. The state requires such negative fact to be set out, and the state has the burden of supporting it. People v. Balkwell, 143 Cal. 259, 76 Pac. 1017; State v. Lee, 69 Conn. 186, 37 Atl. 75; State v. Magnell, 3 Penn. (Del.) 307, 51 Atl. 606; Howard v. People, 185 Ill. 552, 57 N. E. 441; Diehl v. State, 157 Ind. 549, 62 N. E. 51; State v. Aiken, 109 Iowa, 643, 80 N. W. 1073; State v. Watson, 30 Kan. 281, 1 Pac. 770; Dixon v. State, 46 Neb. 298, 64 N. W. 961; State v. Clements, 15 Or. 237, 14 Pac. 410; Hatchard v. State, 79 Wis. 357, 48 N. W. 380.

The evidence in this case, instead of showing the non-necessity of the operation, clearly shows that an operation was necessary to the preservation of life. State v. Wells, 35 Utah, 400, 136 Am. St. Rep. 1059, 100 Pac. 681, 19 Ann. Cas. 631; 1 Enc. Ev. 56; 4 Elliott, Ev. 2771; Bishop, Statutory Crimes, 762.

An expert witness cannot give his opinion based upon the testimony of witnesses he has heard, without assuming such testimony to be true. Barber's Appeal, 63 Conn. 393, 22 L.R.A. 90, 27 Atl. 973; Louisville, N. A. & C. R. Co. v. Falvey, 104 Ind. 409, 3 N. E. 389, 4 N. E. 908; Stoddard v. Winchester, 157 Mass. 567, 32 N. E. 948; Elliott v. Russell, 92 Ind. 526; Chicago, R. I. & P. R. Co. v. Moffitt, 75 Ill. 524; Burns v. Barenfield, 84 Ind. 43; McCarthy v. Boston Duck Co. 165 Mass. 165, 42 N. E. 568; Getchell v. Hill, 21 Minn. 464; State v. Lautenschlager, 22 Minn. 514; Jones v. Chicago, St. P. M. & O. R. Co. 43 Minn. 279, 45 N. W. 444; Carpenter v. Blake, 2 Lans. 206; Link v. Sheldon, 136 N. Y. 1, 32 N. E. 696; Armendaiz v. Stillman, 67 Tex. 458, 3 S. W. 678; Luning v. State, 2 Pinney (Wis.) 215, 52 Am. Dec. 153; Henry v. Hall, 13 Ill. App. 343; Rush v. Megee, 36 Ind. 69; Woodbury v. Obear, 7 Gray, 467; Reed v. State, 62 Miss. 405; Reynolds v. Robinson, 64 N. Y. 589; Hagadorn v. Connecticut Mut. L. Ins. Co. 22 Hun, 249; Gregory v. New York, L. E. & W. R. Co. 55 Hun, 303, 8 N. Y. Supp. 525; Re Snelling, 136 N. Y. 515, 32 N. E. 1006; Gottlieb v. Hartman, 3 Colo. 53; Elgin, A. & S. Traction Co. v. Wilson, 217 Ill. 47, 75 N. E. 436, 19 Am. Neg. Rep. 145; Keyes-Marshall Bros. Livery Co. v. St. Louis & H. R. Co. 105 Mo. App. 556, 80 S. W. 53; Bedford Belt R. Co. v. Palmer, 16 Ind. App. 17, 44 N. E. 686; Crozier v. Minneapolis Street R. Co. 106 Minn. 77, 118 N. W. 256; Williams v. State, 64 Md. 384, 1 Atl. 887, 5 Am. Crim. Rep. 512; People v. Millard, 53 Mich. 63, 18 N. W. 562; State v. Scott, 41 Minn. 365, 43 N. W. 62; People v. McElvaine, 121 N. Y. 250, 18 Am. St. Rep. 820, 24 N. E. 465; State v. Bowman, 78 N. C. 509; State v. Coleman, 20 S. C. 441; Bennett v. State, 57 Wis. 69, 46 Am. Rep. 26, 14 N. W. 912; People v. Vanderhoof, 71 Mich. 158, 39 N. W. 28; People v. Aikin, 66 Mich. 460, 11 Am. St. Rep. 512, 33 N. W. 828, 7 Am. Crim. Rep. 345; State v. Maier, 36 W. Va. 757, 15 S. E. 991; 17 Cyc. 253.

The question of how the abortion or miscarriage was caused, was in

dispute, and was a question for the jury, and it was error to admit the testimony of medical expert witnesses as to their opinion, based upon other evidence not assumed to be true. The question, "Did the doctor tell you the history of the case?" is entirely improper, and affords no foundation for opinion evidence, since it calls for a mere conclusion. State v. Moeller, 20 N. D. 114, 126 N. W. 568.

The charge of the court should be free from intimating any opinion as to the weight of the evidence, or as to what has been proven. State v. Barry, 11 N. D. 428, 92 N. W. 809; People v. Williams, 17 Cal. 142; State v. Whitney, 7 Or. 386; Benedict v. State, 14 Wis. 424; Snyder v. State, 59 Ind. 105; State v. Bige, 112 Iowa, 433, 84 N. W. 518; People v. Cowgill, 93 Cal. 596, 29 Pac. 228; Stokes v. People, 53 N. Y. 164, 13 Am. Rep. 492; McKenna v. People, 81 N. Y. 360; People v. Johnson, 106 Cal. 289, 39 Pac. 622.

In charging the jury the court has no right to assume or state that a "crime has been committed." People v. Casey, 65 Cal. 260, 3 Pac. 874, 5 Am. Crim. Rep. 318; People v. Gordon, 88 Cal. 422, 26 Pac. 502; Brown v. State, 72 Miss. 997, 17 So. 278; Pettus v. State, 58 Tex. Crim. Rep. 546, 137 Am. St. Rep. 978, 126 S. W. 868; Collins v. State, 13 Fla. 651; Bond v. People, 39 Ill. 26; Newton v. State, — Miss. — , 12 So. 560; State v. Porter, 74 Iowa, 623, 38 N. W. 514; Chapman v. State, 109 Ga. 157, 34 S. E. 369; Stephens v. State, 118 Ga. 762, 45 S. E. 619; Santee v. State, — Tex. Crim. Rep. — , 37 S. W. 436; Reese v. State, 44 Tex Crim. Rep. 34, 68 S. W. 283; Reese v. State, — Tex. Crim. Rep. —, 70 S. W. 424; Cortez v. State, — Tex. Crim. Rep. — , 74 S. W. 907; Cavaness v. State, 45 Tex. Crim. Rep. 209, 74 S. W. 908; McCleary v. State, 57 Tex. Crim. Rep. 139, 122 S. W. 26.

The charge of the court violates every presumption of innocence, and of reasonable doubt. State v. Denny, 17 N. D. 519, 117 N. W. 869.

The intent of the defendant to commit the crime charged is one of the essential ingredients of the crime, and should be established by the state, beyond a reasonable doubt. The defendant is not required to prove its absence. The *state* must prove its *presence*. People v. Ribolsi, 89 Cal. 492, 26 Pac. 1082; Ogletree v. State, 28 Ala. 693; Rogers v. Com. 96 Ky. 24, 27 S. W. 813; State v. Schaefer, 35 Mont. 217, 88 Pac. 792; Thomas v. State, 57 Tex. Crim. Rep. 452,

125 S. W. 35; Com. v. Greene, 227 Pa. 86, 136 Am. St. Rep. 867, 75 Atl. 1024; State v. Pilling, 53 Wash. 464, 132 Am. St. Rep. 1080, 102 Pac. 230; People v. Mize, 80 Cal. 41, 22 Pac. 80.

The charge of the court, in effect, places the burden of proof upon the defendant to show that he had no intent to procure an abortion. or that it was necessary to preserve life. People v. Ribolsi, 89 Cal. 492, 26 Pac. 1082; People v. Gordon, 88 Cal. 422, 26 Pac. 502; People v. Mize, 80 Cal. 41, 22 Pac. 80; People v. Rodrigo, 69 Cal. 601, 11 Pac. 481, 8 Am. Crim. Rep. 53.

In such cases the defendant is not required to prove the necessity of the abortion to save life. The burden is upon the state to prove the contrary beyond a reasonable doubt. State v. Wells, 35 Utah, 400, 136 Am. St. Rep. 1059, 100 Pac. 683, 19 Ann. Cas. 631; 1 Cyc. 181; State v. Longstreth, 19 N. D. 268, 121 N. W. 1114, Ann Cas. 1912D, 1317; People v. Balkwell, 143 Cal. 259, 76 Pac. 1017; State v. Lee, 69 Conn. 186, 37 Atl. 75; State v. Magnell, 3 Penn. (Del.) 307, 51 Atl. 606; Howard v. People, 185 Ill. 552, 57 N. E. 441; Diehl v. State, 157 Ind. 549, 62 N. E. 51; State v. Aiken, 109 Iowa, 643, 80 N. W. 1073; State v. Watson, 30 Kan. 281, 1 Pac. 770; Dixon v. State, 46 Neb. 298, 64 N. W. 961.

The charge of the court that the jury could wholly disregard the testimony of any witness who had wilfully and knowingly testified falsely, "unless corroborated by other creditable testimony," was error, because the phrase, "unless corroborated by the facts and circumstances proven on the trial," was omitted.

Such words constitute an essential part of the qualified exception. F. Dohmen Co. v. Niagara F. Ins. Co. 96 Wis. 38, 71 N. W. 69; Mercer v. Wright, 3 Wis. 645; Morely v. Dunbar, 24 Wis. 185; Allen v. Murray, 87 Wis. 41, 57 N. W. 979; Hillman v. Schwenk, 68 Mich. 293, 36 N. W. 77; Blotcky Bros. v. Caplan, 91 Iowa, 352, 59 N. W. 204; State v. Musgrave, 43 W. Va. 672, 28 S. E. 813.

A new trial may be granted on the ground of newly discovered evidence, even though the evidence is cumulative. Hart v. Brainerd, 68 Conn. 50, 35 Atl. 776; Anderson v. State, 43 Conn. 514, 21 Am. Rep. 669; Keet v. Mason, 167 Mass. 154, 45 N. E. 81; Preston v. Otey, 88 Va. 491, 14 S. E. 88; Ellis v. Ginsburg, 163 Mass. 143, 39 N. E. 800; Kochel v. Bartlett, 88 Ind. 237; Mercer v. King, 19 Ky. L. Rep. 781,

42 S. W. 106; State v. Stowe, 3 Wash. 206, 14 L.R.A. 609, 28 Pac. 337; Smythe v. State, 17 Tex. App. 244; Lawson v. State, 13 Tex. App. 264; Tyler v. State, 13 Tex. App. 205; Pinckord v. State, 13 Tex. App. 468.

*Andrew Miller,* Attorney General, and *W. P. Costello,* Assistant Attorney General, and *G. Grimson,* State's Attorney, Cavalier County, for respondent.

The demurrer interposed by the defendant is too general and indefinite, in that no special defect is alleged which might have been cured by seasonable objection. State v. Longstreth, 19 N. D. 279, 121 N. W. 1114, Ann. Cas. 1912D, 1317.

Courts are entitled to have all objections specifically pointed out. People v. Hill, 3 Utah, 334, 3 Pac. 75; Flohr v. Territory, 14 Okla. 477, 78 Pac. 565; Rev. Codes 1905, Section 8912; Penal Code 1877, Section 377; Rev. Codes 1899, Section 7177; Bassett v. State, 41 Ind. 303; State v. Belyea, 9 N. D. 353, 83 N. W. 1.   Distinguished.

The matter of the insufficiency of the evidence is not properly raised in the supreme court, unless first raised and argued in the district court, to afford that court an opportunity to consider and pass upon such question. State v. Empting, 21 N. D. 128, 128 N. W. 1119; State v. Albertson, 20 N. D. 512, 128 N. W. 1122.

The objection and exception to evidence must be specific.   8 Enc. Pl. & Pr. 217–223.

The particular point of the objections must be stated and specified. Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; Rush v. French, 1 Ariz. 123, 25 Pac. 816; F. Mayer Boot & Shoe Co. v. Ferguson, 19 N. D. 496, 126 N. W. 110; Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335; First Nat. Bank v. Warner, 17 N. D. 76, 114 N. W. 1085, 17 Ann. Cas. 213.

The objection to evidence, that it is incompetent, irrelevant, and immaterial, is bad, if the objection is one that might have been remedied. 3 Enc. Pl. & Pr. 223; 9 Enc. Ev. 58; Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073; McQueen v. Bank of Edgemont, 20 S. D. 378, 107 N. W. 208; Davis v. Holy Terror Min. Co. 20 S. D. 399, 107 N. W. 374; Louisville, N. A. & C. R. Co. v. Falvey, 104 Ind. 409, 3 N. E. 389, 4 N. E. 908.

The same principle is applied also to hypothetical questions. 9 Enc. Ev. 90–92, 103, 105; Prosser v. Montana C. R. Co. 17 Mont. 372, 30 L.R.A. 814, 43 Pac. 81; United Oil Co. v. Roseberry, 30 Colo. 177, 69 Pac. 588; People v. Willson, 109 N. Y. 345, 16 N. E. 540; Howland v. Oakland Consol. Street R. Co. 110 Cal. 513, 42 Pac. 983; Wilson v. Harnette, 32 Colo. 172, 75 Pac. 395; Chicago, R. I. & P. R. Co. v. Archer, 46 Neb. 907, 65 N. W. 1043; Reeves v. Chicago, M. & St. P. R. Co. 24 S. D. 84, 123 N. W. 498; State v. Kammel, 23 S. D. 465, 122 N. W. 420; Stahl v. Duluth, 71 Minn. 341, 74 N. W. 143; Colton Land & W. Co. v. Swartz, 99 Cal. 284, 33 Pac. 878; People v. Frigerio, 107 Cal. 151, 40 Pac. 107; Rush v. French, 1 Ariz. 124, 25 Pac. 816.

The defective form of questions should be cured by changing the form, rather than by waiting to bring error in the higher court. Fraser v. Jennison, 42 Mich. 206, 3 N. W. 882; McFall v. Smith, 32 Ill. App. 468; 8 Enc. Pl. & Pr. 762–764; 5 Enc. Ev. 619.

Where there is no conflict over the material facts, an expert may be asked his opinion as based upon the testimony of other witnesses heard by him. Rogers, Expert Testimony, 2d ed. 71; Olmsted v. Gere, 100 Pa. 127; 1 Greenl. Ev. p. 440; Dexter v. Hall, 15 Wall. 9, 21 L. ed. 73; Page v. State, 61 Ala. 16; Pidcock v. Potter, 68 Pa. 342, 8 Am. Rep. 181; Bishop v. Spining, 38 Ind. 143; State v. Klinger, 46 Mo. 224; Carpenter v. Blake, 2 Lans. 206; Coyle v. Com. 104 Pa. 117, 4 Am. Crim. Rep. 379; State v. Privitt, 175 Mo. 207, 75 S. W. 462; Reg. v. Higginson, 47 Eng. C. L. 149, and note.

Where the material facts are not disputed, the question becomes one of science only. 5 Enc. Ev. 612; Scurlock v. Boone, 142 Iowa, 580, 120 N. W. 313; Dexter v. Hall, 15 Wall. 9, 21 L. ed. 73; Olmsted v. Gere, 100 Pa. 127; State v. Privitt, 175 Mo. 207, 75 S. W. 462; Reeves v. Chicago, M. & St. P. R. Co. 24 S. D. 84, 123 N. W. 498; Stahl v. Duluth, 71 Minn. 341, 74 N. W. 143.

In the trial of a suit, if error is committed in admitting incompetent testimony, it is cured by proving the same facts by other competent testimony. State v. Smith, 115 La. 801, 40 So. 171; People v. Lee Dick Lung, 129 Cal. 491, 62 Pac. 71; State v. Rapp, 142 Mo. 443, 44 S. W. 270; State v. Woodward, 182 Mo. 391, 103 Am. St. Rep. 646, 81 S. W. 857; State v. Allen, 94 Mo. App. 508, 69 S. W. 604; Wood-

ruff v. State, 72 Neb. 815, 101 N. W. 1114; State v. Robinson, 126
Iowa, 69, 101 N. W. 634; State v. Schmidt, 34 Kan. 399, 8 Pac. 867;
Steageld v. State, 24 Tex. App. 207, 5 S. W. 853; State v. Ford, 3:
Strobh. L. 517, note; State v. Merriman, 34 S. C. 619, 12 S. E. 619;
Jinks v. State, 35 Tex. Crim. Rep. 365, 33 S. W. 868.

General usage need not be shown. If there is a general usage ap--
plicable to a particular profession or trade, parties employing an indi-
vidual in that profession are supposed to deal with him according to
that usage. 12 Cyc. 1044, and cases cited.

Upon the questions as to the practice of women to inflict injury upon
themselves in attempts to produce abortions, if it was error to sustain
objections to such questions, it was error without prejudice. People
v. Fong Ah Sing, 70 Cal. 8, 11 Pac. 323; Territory v. Collins, 6 Dak.
234, 50 N. W. 122; State v. Smith, 8 S. D. 547, 67 N. W. 619.

The intent and scope of cross-examination is within the sound dis-
cretion of the court. State v. Foster, 14 N. D. 561, 105 N. W. 938;
State v. Longstreth, 19 N. D. 279, 121 N. W. 1114, Ann. Cas. 1912D,.
1317; 8 Enc. Pl. & Pr. 109, and cases cited.

In the absence of statutory provision, it is not necessary that physi-
cians or surgeons be graduated from a medical college, or have a li-
cense to practise, in order to render them competent to testify as ex-
perts regarding matters in connection with their profession. Rogers,
Expert Testimony; New Orleans, J. & G. N. R. Co. v. Allbritton, 38:
Miss. 242, 75 Am. Dec. 98; State v. Speaks, 94 N. C. 874.

The weight of such evidence is left to the jury. 17 Cyc. 39, 260;.
Ft. Wayne v. Coombs, 107 Ind. 75, 57 Am. Rep. 82, 7 N. E. 743;
Ardesco Oil Co. v. Gilson, 63 Pa. 146, 10 Mor. Min. Rep. 669; 8 Enc..
Pl. & Pr. 239–240.

The objections and exceptions to the court's charge to the jury were
not timely made and filed, and therefore cannot be considered. The
charge of the court should be real and construed as a whole. Buchanan
v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335;
McBride v. Wallace, 17 N. D. 495, 117 N. W. 857; Gagnier v. Fargo,
12 N. D. 219, 96 N. W. 841; Territory v. Taylor, 1 Dak. 479; State
v. Denny, 17 N. D. 519, 117 N. W. 869; People v. Doyell, 48 Cal. 85;
State v. Finlayson, 22 N. D. 233, 133 N. W. 298.

Where the jury are told that they are the sole and exclusive judges of

the weight of the testimony, it follows that they are told that they are such judges of all questions of fact. State v. Winney, 21 N. D. 72, 128 N. W. 680.

Neither can counsel complain of an instruction requested by himself. Pierce v. Millay, 62 Ill. 133; Weller v. Hawes, 49 Iowa, 45; Campbell v. Ormsby, 65 Iowa, 518, 22 N. W. 656; Smith v. Sioux City & P. R. Co. 38 Iowa, 173.

In cases like the one at bar, the jury having found that an unlawful, principal act was done, it was not necessary to show any intent. Belt v. Spaulding, 17 Or. 130, 20 Pac. 827; People v. Abbott, 116 Mich. 263, 74 N. W. 529, 11 Am. Crim. Rep. 4; Smith v. State, 33 Me. 48, 54 Am. Dec. 607.

In cases like this, the burden is upon the defendant to show the necessity of an operation done to save the life of the person. State v. Lee, 69 Conn. 186, 37 Atl. 75; 1 Cyc. 188; State v. Schuerman, 70 Mo. App. 518; People v. McGonegal, 136 N. Y. 62, 32 N. E. 616; 4 Elliott, Ev. 2771; Bradford v. People, 20 Hun, 309; Moody v. State, 17 Ohio St. 110.

The court's announcement of the rule applying to witnesses who wilfully and knowingly testify falsely is correct. State v. Winney, 21 N. D. 72, 128 N. W. 680.

Defendant is limited in the supreme court to objections and exceptions taken below. State v. Campbell, 7 N. D. 58, 72 N. W. 935.

Errors in charging the jury, or in refusing to charge, should not be considered as reversible error, where it is plain that the issue has been fairly tried and presented to the jury. Standard Oil Co. v. Brown, 218 U. S. 84, 54 L. ed. 945, 30 Sup. Ct. 669; Press Pub. Co. v. Monteith, 103 C. C. A. 502, 180 Fed. 357; State v. Oscar, 52 N. C. (7 Jones, L.) 305.

BRUCE, J. The defendant was convicted of the crime of murder in the second degree. The crime, as charged, was the unintentional killing of a human being while engaged in the commission of a felony; that is, the procurement of an abortion. The defendant has appealed from the judgment.

The first assignment of error related to the demurrer interposed to the information, which was overruled by the court. The information,

omitting the formal parts, reads as follows: "That heretofore, to wit, on or about the 9th day of February, A. D. 1911, at the county of Cavalier, state of North Dakota, one James J. Reilly, late of the county of Cavalier, and state of North Dakota, did commit the crime of murder in the second degree, committed as follows; to wit: That at the village of Milton, county of Cavalier, state of North Dakota, on or about the 9th day of February, A. D. 1911, in and upon the body of one Lillian Drury, a human being then and there being, the said James J. Reilly did unlawfully, wilfully, and feloniously, and without any design to effect the death of the said Lillian Drury, commit an assault with some instrument or other means to this informant unknown, and the said James J. Reilly did then and there unlawfully, wilfully, and feloniously, and without the design to effect the death of the said Lillian Drury, use and employ, insert and thrust, the said instrument and other means aforesaid upon and into the womb of said Lillian Drury, who, at that time and place was a woman pregnant with child, with the intent then and thereby to produce and procure the miscarriage of the said Lillian Drury, the same not then and there being necessary to preserve the life of the said Lillian Drury, and the said James J. Reilly did then and there, by the means and in the manner aforesaid, inflict in and upon the body of the said Lillian Drury, a mortal wound of which said mortal wound the said Lillian Drury did, on the 20th day of February, A. D. 1911, at the village of Milton, county of Cavalier, state of North Dakota, die." The crime is charged in the language of the statute. See § 8912, Rev. Codes 1905, and we believe that the information is not vulnerable to a demurrer. All that the Code requires of informations is that they shall contain "a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Rev. Codes 1905, § 9848. It would, we believe, be absurd to contend that a person of ordinary understanding would not understand the meaning and intent of this information. The word "same," it appears to us, must relate to the word "miscarriage." State v. Quinn, 2 Penn. (Del.) 339, 45 Atl. 544. We realize, of course, that there is a statement in the case of State v. Belyea, 9 N. D. 353, 361, 83 N. W. 1, which may seem to suggest a contrary view to that taken by us. This statement, however, hardly rises even

to the dignity of a *dictum*. It was a declaration merely, and was expressly stated to be outside of the opinion. So, too, our attention has been called to the case of Bassett v. State, 41 Ind. 303. In that case, however, the information stated that "the employment *of said instrument* not being necessary to preserve the life of the woman," without alleging that the miscarriage was not necessary to save the life of the woman. The allegations in the two cases are not, to our minds, at all similar.

Appellant's second point relates to the jury. The record shows that on the 9th day of June, 1911, an order was made by the Honorable W. J. Kneeshaw, directing the summoning of a petit jury of thirty-six men to serve for the adjourned term of the district court convening on June 19th; that such jurors were selected, and that thirty-three of them appeared on June 19, 1911; that of said thirty-three jurors one was excused for the term, and all of the balance remained until the 21st day of June, 1911, at which time one more was excused, and the balance of thirty-one remained and served as jurors until the 24th day of June, when the court was duly adjourned to meet on the 5th of July; that on the 24th day of June and prior to the adjournment, and in the absence of the defendant and his counsel, and without the consent of defendant or his counsel, the district judge peremptorily excused from further service as jurors for the term sixteen of said panel, leaving only fifteen men of the original panel to serve; "that in order to complete the panel, on the 24th day of June, the said judge made an order for a petit jury of thirty-six additional men to complete the panel, said jurors being required to be present at the term of the court to be held on the 6th day of July; that pursuant to such order, a meeting of the county board was called, and thirty-six additional men were selected; that during all of this time the action was pending in the court for trial; that prior to such time, and on the first day of said adjourned term, to wit, on the 19th day of June, the defendant had filed an affidavit of prejudice against the Honorable W. J. Kneeshaw; that the civil and criminal business noticed for trial at said term was disposed of by the court on or before June 24th, and that at said time the adjournment to the 5th day of July was taken; that the sole purpose of the adjournment from June 24th to July 5th was for the trial of said action against said Reilly, and to give an opportunity for the Honorable

A. G. Burr to sit and act as presiding judge in the place of the Honorable W. J. Kneeshaw. The record further shows that when, on the 24th day of June, the Honorable W. J. Kneeshaw made the order for the thirty-six additional men, one W. L. Drury was the sheriff of Cavalier county, and one G. A. Trumbull was his deputy, but no notice of the meeting of the board to select said jurymen was served upon them, and said parties were denied permission to participate as members of the board, the clerk summoning and allowing one S. G. Gibson, the coroner of said county, to act in their place. It was also shown, however, that the said W. L. Drury was the father-in-law of the deceased woman, and also that the said S. G. Gibson had officiated at the inquest upon the body of the said deceased, and was a witness on behalf of the prosecution on the preliminary hearing. It was also shown that the defendant had been a resident of Milton village for many years, and that of the sixteen jurors first excused, six lived in the vicinity of Milton. On a challenge being made by the defendant to this panel and a demand being also made for an attachment to resummon the said sixteen jurors discharged on June 24th, the court granted the said challenge and discharged the panel, finding, among other things, that the order for the new panel was made after the affidavit of prejudice against the Honorable W. J. Kneeshaw had been filed; that no notice was served upon the sheriff to attend and serve, and that the coroner was the same person who had made the complaint. He then ordered that a sufficient number of persons possessing the qualifications of jurors should be summoned from the body of the county for the purpose of completing the number required for a jury in the particular case. To this order the defendant excepted for the reasons that "a competent jury was drawn on June 13, 1911, for the trial of all cases to be tried at the term of the court commencing on June 9th, and to which said term the present session was an adjourned term; that the defendant had a right to select a jury for the trial of the action primarily from the panel so regularly drawn on June 13th, and that the action of the court in vacating the entire panel so drawn on June 13th was unwarranted in law." Before the talesmen so summoned were sworn, the defendant challenged the new panel "on the ground and for the reason that the panel now before the court is composed and made up of four members of the original panel heretofore cited to appear and drawn on June 13,

1911, and that the balance of said panel now before the court is made up of jurors drawn as heretofore set forth in the drawing of jurors on June 27, 1911, and that the panel as now composed is made up of the identical persons who were summoned and selected on June 13th and 27th, as heretofore set forth in defendant's challenge to the panel, and that by reason of such facts the relation of defendant to said panel is not changed," and requested the court to resummon the sixteen jurors of the panel drawn on June 19, 1911, and dismissed by the Honorable W. J. Kneeshaw. This challenge was made individually and collectively. It was granted, and the court then entered an order directing the clerk to convene the jury board for the purpose of drawing thirty-five additional jurors for the trial of the cause. On the court reconvening, the defendant again interposed a new challenge to the effect that "at this time, no juror having yet been sworn, the defendant challenges the panel of thirty-six men now before the court, being the panel selected on July 8, 1911, on the ground and for the reason stated in the previous objection to the order of the court that said panel be selected, and on the further ground that the regular panel of the jurors drawn for the term of court to commence on the 19th day of June, 1911, has not been examined or exhausted, and that the defendant has the right that said panel so drawn on June 13, 1911, be examined as to their qualifications as jurors in this case and exhausted before a new panel shall be called for the trial of this action, and that sixteen of said original panel were unlawfully excused by the court as set forth in the previous objection made to this panel by the defendant; and that said court has refused to recall the said sixteen jurors, and, on the contrary, did excuse the whole of said panel." This challenge was disallowed. The defendant then objected to the calling and examination of the jurors, for the reason that only thirteen out of the panel of thirty-five summoned were present. This objection was also overruled.

The objections of counsel for the defendant are not well taken. It is to be remembered that he himself was, throughout, the challenging party, and that in every case except the last his challenge was allowed. If the challenge on July 6th had been made by the state, and not by himself, there might have been some force in the objection, but this was not the fact. His challenge of that date, it is to be remembered, was to the entire panel. It is true that he offered an amendment to this

challenge, requesting the court to resummon the sixteen jurors of the panel drawn on June 9th, who, he claims, were arbitrarily and unlawfully dismissed by Judge Kneeshaw on June 24th; but we are fully satisfied that he had no right to the resummoning of these jurors. It is well settled "that the court may, for reasons which, in the exercise of its discretion it deems sufficient, excuse jurors who have been summoned, from serving, although such action may necessitate the resort to talesmen or additional jurors to complete the panel. . . . The court may, in the exercise of its discretion, excuse jurors for reasons which constitute no legal ground of disqualification or exemption." See 24 Cyc. 260, and cases cited; 24 Cyc. 254–e and cases cited. It may be true that parties litigant have a right to a jury of the original panel so far as it is practicable to procure it, and that the court has no right to arbitrarily discharge the regular panel without cause, and summon another for the trial of a particular case. See 24 Cyc. 251, 252 and cases cited; also State v. Atkinson, 29 La. Ann. 543; State v. Washington, 90 N. C. 664; State v. Lytle, 27 N. C. (5 Ired. L.) 58; State v. Shaw, 25 N. C. (3 Ired. L.) 532; People v. Edwards, 101 Cal. 543, 36 Pac. 7; Judge v. State, 8 Ga. 173; Hight v. Langdon, 53 Ind. 81; but the cases which hold to this proposition fall far short of holding that error is committed where a court, for reasons of its own, has discharged a portion of a panel and either provided for the calling of talesmen or for an additional panel to fill the vacancies, especially where there is no proof or suggestion of partiality on the part of such court, or of any real prejudice to the defendant. The real thing to be guarded against is the denial of an impartial jury of one's peers, and there seems to have been no such denial in the case at bar. So, too, it is well established that "where some jurors summoned fail to appear, it is not necessary, in the absence of statute, for the court to delay the impaneling of the jury or to postpone the trial; nor is it necessary for the court to have other jurors summoned to fill the places of those who are absent, or to issue attachments for the absent jurors." See 24 Cyc. 254, and cases cited. As far, too, as the objection which might have been made to the summoning of the talesmen in the place of a regular panel and without any nucleus to which these talesmen could be added, it will be seen that the error was cured by the defendant, him-

self objecting to the whole of such new panel, and by the objection being allowed. There is no merit in the points raised.

Appellant takes exception to a number of questions asked of the witness Dr. J. Semple. They were, in the main: "From the history of them, from the history given by the various witnesses named as to the condition of Mrs. Drury from the time she left here in company with the witness Gandie to the time of her death, and the post mortem examination, have you formed any conclusion as to the cause of her death?" "From the testimony of the various witnesses you have heard and who I have heretofore named, giving the history of the case as far as it relates to the deceased, have you formed any opinion as to whether there is any evidence—whether or not there is any indication of any other—any cause of death except blood poison?" The objection is made that by these questions the witness was not required to assume the truth of the testimony referred to, and that, while giving that testimony, the witnesses, or some of them, themselves expressed an opinion as to the cause of the death. It is argued that a hypothetical question and answer cannot be based upon the opinion of another witness. On an examination of the record, however, we find that there is no merit in these objections. The witness Dr. Semple, later on in his examination, was asked: "Did you say your testimony, your opinion, given yesterday, was based in part upon the opinion given by other men, or was it merely on their testimony as to the conditions they saw?" The answer was, "Yes." This, of course, was open to two constructions, but the question was followed by another, which was: "Doctor, didn't you tell me it was based upon everything Dr. Ruediger said upon the stand?" Answer. "Yes, I said that." Question. "And it was based upon his opinion given on the stand?" Answer. "I had formed an opinion without hearing his opinion. I have formed an opinion from the description of the different conditions. My opinion *with reference to blood poisoning was formed from the testimony alone, and not from the opinion of anybody. I did not take anybody's opinion, as there were sufficient facts testified to to form my own opinion.*" It is clear, indeed, from this testimony, that the doctor based his opinion upon the facts disclosed, and not upon the opinion of others.

There is, however, another and controlling reason why the case should not be reversed on account of the questions and answers referred to.

This reason applies both to the objection that the doctor was giving an opinion based upon an opinion, and to the objection that the question did not assume the truth of the testimony or facts referred to. It is that the objection in the trial below was not sufficiently definite. The objection was merely that "the question was incompetent, irrelevant, and immaterial, no foundation laid, and an improper question,—*improper to ask for the opinion of the doctor.*" This form of objection was entirely too general to call the court's attention to the particular vices now pointed out. Appellant should have pointed out the particular defect which rendered the question either incompetent, irrelevant, or immaterial, or wherein it was not a proper hypothetical question, in order that the objection could have been intelligently ruled upon by the trial court, and, if necessary, the defect obviated. Howland v. Oakland Consol. Street R. Co. 110 Cal. 513, 520, 42 Pac. 983; Seckerson v. Sinclair, 24 N. D. 625, 140 N. W. 239; Reeves v. Chicago, M. & St. P. R. Co. 24 S. D. 84, 123 N. W. 498; Stahl v. Duluth, 71 Minn. 341, 74 N. W. 143.

Objection is also made that the court erred in overruling defendant's objection to the questions propounded to Dr. E. V. Gustafson; namely, "Q. Doctor, when another physician is called in a serious case, what is the custom of the first physician? What does he usually do?" and, "Tell him everything he knows about the case?" and "including everything he has done and prescribed?" The objection made to these questions was that they were incompetent, irrelevant, and immaterial, no foundation laid, and not in any way binding upon this defendant. They were evidently asked for the purpose of showing to the jury concealment on the part of the defendant, and that when he summoned Dr. Gustafson to aid him he did not tell him what operations he had performed. The objection made in this court is that it was an attempt to prove a custom without showing what the custom was in the vicinity, and what was the custom of the defendant, or that the defendant knew of the existence of the custom. "What the witnesses would or would not have done under similar circumstances cannot be a criterion," appellant urges, "as to what the defendant should have done under similar circumstances." There is no merit in this objection. "If there is a general usage applicable to a particular profession or business, parties employing an individual in that profession are supposed to deal with

him according to that usage." 12 Cyc. 1044. Even if it could be possibly argued that the local custom in this respect might have been different from the general, the objection raised in the trial court is hardly specific enough to suggest the objection.

Exception is next taken to the refusal of the court to allow an answer to the following question propounded to Dr. Gibson on cross-examination: "How is this done?" and, "Isn't it a fact within medical knowledge that these intentional abortions you speak of are performed by the woman herself, and are often done by the use of a needle, knitting needle, lead pencil, or some other instrument?" The objections made to these questions were that they were not proper cross-examination. The purpose of the question was to show that the wound might have been inflicted by the woman herself, by means of a knitting needle, lead pencil, or some other instrument. Before the examination was over, the doctor thoroughly covered this point. He said: "It would be a difficult thing to introduce an instrument and to push it through the side of that, herself. It is not very easy to go through the side of the cervix. Shock would immediately follow. I base those reasons on the size of the wounds and on the firmness of the tissues. A sharp and pointed instrument would more easily penetrate. It would be possible to produce a wound in the same region by penetration of a smaller instrument than a dilator. A knitting needle, for instance."

So, too, when the objection was made, the following colloquy took place:

The Court. Is that with reference to the statement that the patient could not have done it herself?

Counsel for defendant. Yes, sir.

The Court. I think you can find out why he said so, but he cannot be an expert and know whether a woman frequently does so or not. That is not a subject for expert testimony. I will sustain the objection. You can cross-examine, however, on his reasons for saying she did not do it.

And counsel for the defendant then asked the following question: Doctor, you said yesterday that this wound could not have been made by the woman herself. What are your reasons for that opinion? This last question, as above stated, the witness was allowed to fully answer. Reference is made, we know, by counsel, to the opinion in the case of

State v. Moeller, 20 N. D. 114, 126 N. W. 568, — N. D. —, 138 N. W. 981, and to a ruling therein on a similar question. The language of that opinion, however, is in no way in conflict with our opinion here. The opinion merely said: "Error is assigned because Dr. Engstad was not permitted to testify in substance that it was not uncommon for women illegitimately pregnant to inflict injuries upon themselves, particularly upon the uterus, in an attempt to produce a miscarriage and conceal their condition. We do not pass upon the objection taken to questions of this nature, for the reason that the court records how similar questions were asked of experts and answered, and there is no conflict in the evidence on this point, and an answer to this question, if in favor of the appellant's contention, would only have been cumulative. Hence, if it was error to sustain the objection it was error without prejudice." There was, it will be seen, in the opinion no attempt to pass upon the correctness of the question, and we do not believe that the question was at all competent or pertinent. The reason given by the trial court, indeed, sustaining the objection, was entirely sufficient. What other women did or had done was not a subject for expert testimony. Whether a woman could perform the operation upon herself was a proper subject for such testimony, and to this fact the witness was allowed to testify. Not only was this the fact, but Dr. Ruediger, one of the witnesses for the state, testified that the thing could be done. "There is," he said, "nothing in the location or direction of this wound that would prevent a smaller wound to have been made in the same way by a smaller instrument. A knitting needle could have penetrated in the same general direction if used by the woman. A pencil is doubtful. It might be possible, but I doubt it very much. It might be possible." The point in issue, indeed, was not what other women had attempted, but whether the particular act in question could have been inflicted by these means. It was, in fact, whether a wound of the size and nature of that in question could have been inflicted by the deceased herself. We do not find that the defendant was in any way restricted from proving these facts.

The next point is that the court erred in sustaining the state's objection to the following question propounded to Dr. Gibson: "We will assume, then, doctor, that there has been a small wound in the cervix. Now, assuming that a wound was made with the point of a lance or

point of a pin, or something of that nature, is it not a fact that this infection and putrefaction might start from that kind of a wound?" It is doubtful whether there was any evidence in the record on which to base this question. Even if there was, no material error was committed in excluding it, as the question was fully answered by other witnesses, —in fact, by practically all of the witnesses for the state. Dr. Gibson, for instance, testified that "a sharp instrument would be more likely to penetrate, and if there was infection on the instrument that produced it, on the knitting needle for instance, a smaller instrument that produced it would set up infection in the uterus, very likely. Dr. Ruediger went further than this, and testified that "it is possible, if a knitting needle penetrated that cervix in the same manner in a general way where the perforation in this case was, that the woman could be up and about. Probably infection would start." And, again: "I testified yesterday and said that all instruments should be sterilized before the operation. It is very probable the infection was taken into the wound from the instruments or by means of the instruments not being sterilized. It is my theory that infection was carried in with the instrument that made the penetration, in all probability. That is what I want the jury to infer. If there was infection in the mouth of the cervix at the time the instrument passed through, infection would quite probably be carried into the wound in that way, though you assume that the instrument was thoroughly sterilized. A germ might attach to the instrument as it passed through the infected region."

Another objection is made to the question asked of Dr. Gibson: "Did the doctor tell you the history of the case?" This objection is a re-assignment of a former one, but this time the point is urged that by the question the doctor was asked to give an opinion. It is urged that when he said that a history was given he did not, and could not, know whether the facts related to him were history or not,—that is to say, a complete history. The weakness of the objection is too clear to need argument further than to say that if the history related was incomplete the facts could easily have been drawn out on cross-examination,—that is to say, whether or not the defendant told him of the operation upon the womb.

Objection is made to the refusal of the court to allow the witness

Nellie Gandie to answer the questions: "Did Dr. Gustafson himself give her any treatment at that time?" and "Has he, that is to say, Dr. Reilly, ever visited you or attempted to communicate with you?" These questions were asked on cross-examination, and were not, strictly speaking, proper in such examination at such time in the order of proof. It is also difficult to see how any prejudice was occasioned by the refusal to allow them. The witness had testified: "I have never talked to Dr. Reilly what my testimony was to be in this case prior to last night," and it would seem that this sufficiently covered the point. So, too, the extent and scope of cross-examination is within the sound discretion of the court, and there must be some limits thereto. State v. Foster, 14 N. D. 561, 105 N. W. 938; State v. Longstreth, 19 N. D. 268, 121 N. W. 114, Ann. Cas. 1912D, 1317; 8 Enc. Pl. & Pr. 109.

Objection is also made to the action of the court in not refusing to allow Dr. Gibson to testify, on the ground that no foundation was laid for his testimony. The doctor testified: "My name is S. G. Gibson. I am a physician and surgeon, and have practised eighteen years. I am a graduate of Western University. I have practised my profession in Langdon ever since I graduated. I have treated all kinds of ailments and sicknesses. I have performed surgical work. I am county coroner." Objection is made that there is nothing in this testimony to show that the doctor was a graduate of any medical school, and that he had ever been licensed to practise medicine and surgery. There is nothing in this point. The foundation laid abundantly showed the capacity of the doctor as an expert witness. Whether he had been licensed to practise medicine in North Dakota, or was a graduate of a medical school, might have been pertinent in an action brought by him to recover fees, or in a criminal prosecution for practising without a license, but it was in no way controlling as to his capacity as an expert. So, too, the objection is nowhere to be found in the abstract, and merely appears in the assignments of error and in the brief of counsel.

Counsel next assigns as error the giving of the following instructions: "It is not your fault that this prosecution is commenced, or that a crime has been committed, and if a crime has been committed by the defendant at the time and place and in the manner and form charged, then he has no right to ask or expect at your hands anything else than

a verdict saying so; nor has the state a right to ask a conviction of a person who has not committed a crime." It is urged that in this instruction the court tells the jury that a crime has been committed, and that the fact that a crime has been committed is one of the material and essential allegations of the information. Counsel, in fact, urges that by the instruction the court tells the jury that the *corpus delicti* is proven. This we do not believe to be the case. Technically speaking a crime had been committed. It is practically undisputed that an abortion was performed either by the deceased herself, or by the defendant, or by some third person. The performing of such an operation upon one's self is a crime. See § 8913, Rev. Codes 1905. Even if there is in the charge a possible suggestion that the crime referred to was the crime charged against the defendant, the error, if any, was abundantly cured by the other portions of the charge. In the charge as a whole the jury is instructed that "the defendant is entitled to every presumption of innocence compatible with the evidence in this case, and if it is possible to account for the death of the deceased upon any reasonable hypothesis other than that of the guilt of the defendant, it is your duty to so account for it, and find the defendant not guilty." The allegations of the information are then recited to the jury in full and the jury are told that they must be proved beyond a reasonable doubt. The record also shows that in the instructions asked by the defendant, he himself everywhere took the position that a *crime had been committed*. We are satisfied that the instructions as a whole, if reasonably considered and interpreted, fully presented the issues to the jury, and that there was no error of which the defendant can complain.

Exception is also taken to the following charge: "Now, gentlemen of the jury, one witness, Nellie Gandie, has gone on the witness stand and given her testimony, and the defendant in this case, through this case, charges her with being an accomplice in *the crime,* if any crime was committed. Now, gentlemen, I charge you that an accomplice is defined as an associate in crime,—one who co-operates, aids, or assists in committing it. You are instructed that if you find that Nellie Gandie was an accomplice of the defendant, that is, a person who actually committed or assisted or participated in *the crime,* that such evidence is admissible." Here, again, it is argued that the court assumed that a crime had been committed. We do not think that this is the case.

The court expressly qualified his language by adding the words: "If any crime was committed," and these words are found immediately following the words, "in the crime," where they are first used in the specific charge. It is true that no such qualification was made immediately before the words, "in the crime, that such evidence is admissible," but the instruction must be taken as a whole, and, taken as a whole, we think the instruction was not prejudicial.

Again, exception is taken to that portion of the charge which reads as follows: "Gentlemen of the jury, some of the testimony tending to connect the defendant with the commission of *the crime* charged is what is known as circumstantial evidence." It is urged that it was for the jury to say whether the evidence tended to connect the defendant with the crime, and that the court had inadvertently usurped the province of the jury. In support of this the cases of State v. Porter, 74 Iowa, 623, 38 N. W. 514; Chapman v. State, 109 Ga. 157, 34 S. E. 369; Stephens v. State, 118 Ga. 762, 45 S. E. 619; Santee v. State, — Tex. Crim. Rep. —, 37 S. W. 436; Reese v. State, 44 Tex. Crim. Rep. 34, 68 S. W. 283; Reese v. State, — Tex. Crim. Rep. —, 70 S. W. 424; Cortez v. State, — Tex. Crim. Rep. —, 74 S. W. 907; Cavaness v. State, 45 Tex. Crim. Rep. 209, 74 S. W. 908; McCleary v. State, 57 Tex. Crim. Rep. 139, 122 S. W. 26, are cited. The objection at best is a technical one, however, and we have serious doubts as to the wisdom of some of the rulings cited. So, too, in this case defendant is hardly in a position to complain or suggest error both in regard to this and the prior objection in regard to the evidence of the accomplice. The instructions given by the court used the same phraseology which was repeatedly requested by the defendant himself, in his proposed instructions. The instructions asked by the defendant were as follows: "Under the laws of this state no conviction can be had in this kind of a case upon the uncorroborated testimony of an accomplice. It is for you to determine from the testimony in this case whether or not the witness Nellie Gandie was an accomplice in the commission of *this crime*. If you find, as a fact, that Nellie Gandie was associated, aided, co-operated, or assisted the defendant, James J. Reilly, *in committing it*, then no conviction in this case can be had unless her testimony is corroborated by some other credible testimony in this case; and the corroboration is not sufficient if it merely shows the commission of the

offense or the circumstances thereof, but such corroborative testimony must tend to connect the defendant with the commission of *the crime."* This instruction was refused merely because it was covered by those given. Again, the defendant asked for this instruction: "You are instructed that if you find that Nellie Gandie was an accomplice of the defendant, that is, a person who actually commits or assisted or participated *in the crime,* that such evidence is admissible," etc. Again: "If you find that the witness Nellie Gandie was an accomplice, you must disregard her testimony unless it is corroborated by testimony that tends to connect the defendant with the commission of *the crime,* and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof; and a proper test is this: Is there testimony in the case if, standing alone, it tends to connect the defendant with the commission of *the crime?"* Again: *"The only other testimony in the case tending to connect the defendant with the commission of the crime,* apart from the testimony of Nellie Gandie, is what is known as circumstantial evidence, and the jury are instructed as a matter of law that circumstantial evidence is legal and competent in criminal cases, and if it is of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty, it is entitled to the same weight as direct testimony." It will be clearly seen that the court merely used the language of the defendant himself, and that the defendant cannot complain. Pierce v. Millay, 62 Ill. 133; Weller v. Hawes, 49 Iowa, 45; Campbell v. Ormsby, 65 Iowa, 518, 22 N. W. 656; Smith v. Sioux City & P. R. Co. 38 Iowa, 173; State v. Haines, 160 Mo. 555, 61 S. W. 621; Horton v. State, 120 Ga. 307, 47 S. E. 969; People v. Biggins, 2 Cal. Unrep. 303, 3 Pac. 853; Hudson v. State, 28 Tex. App. 323, 13 S. W. 388; Carter v. United States, 1 Ind. Terr. 342, 37 S. W. 204; Quattlebaum v. State, 119 Ga. 433, 46 S. E. 677; Whitmore v. State, 72 Ark. 14, 77 S. W. 598; Clay v. State, 15 Wyo. 42, 86 Pac. 17, 544; State v. Campbell, 210 Mo. 202, 109 S. W. 706, 14 Ann. Cas. 403.

Objection is also made to the following charge: "The term feloniously applies to the manner and intent with which an act is done, and includes the commission of an act which, when done, would result in a felony as defined by our statutes; and in this respect I charge you, gentlemen of the jury, that our law presumes that a person intends

the reasonable consequences of his voluntary act, and such presumption may be satisfactory if uncontradicted. The law further presumes that an unlawful act is done with an unlawful intent; and if the state has shown to your satisfaction, beyond a reasonable doubt, that an·unlawful act has been committed by the defendant, that said unlawful act or acts was the act charged in this information, then you are at liberty to presume that the same was done with an unlawful intent, and that he intended the ordinary consequences of his voluntary act, unless the same is contradicted." It is objected that this instruction permits the jury to presume from one fact another fact which is essential to be established to the satisfaction of the jury beyond a reasonable doubt. And, again, exception is taken to the instruction: "I charge you, gentlemen of the jury, that our law presumes that a person intends the ordinary consequences of his voluntary act, and such presumption may be satisfactory if uncontradicted. The law further presumes that an unlawful act was done with an unlawful intent; and if the state has shown to your satisfaction, beyond a reasonable doubt, that an unlawful act was committed by the defendant, that said unlawful act or acts was the act charged in this information, then you are at liberty to presume that the same was done with an unlawful intent, and that he intended the ordinary consequences of his voluntary act, unless the same is contradicted." The objection of counsel to these instructions is somewhat incoherent. He argues that the instructions are erroneous in that "they violate every right of the defendant as to presumption of innocence and of reasonable doubt, and permit the jury to presume, from one fact, another fact which is essential to be established to the satisfaction of the jury beyond a reasonable doubt." He says that "the basis of the prosecution rests on the statute of abortion, being § 8912, Rev. Codes 1905; that is, the facts necessary to constitute the crime of abortion must first be shown, and, when shown, if death results from the doing of the thing in the abortion statute inhibited, then the crime of murder in the second degree is the crime committed." "One of the essential ingredients of the crime of abortion," he adds, "is that the act was done with the intent thereby to procure the miscarriage of such woman. Intent is an essential ingredient of the crime. That intent must be established beyond a reasonable doubt. The defendant need not prove absence of intent. The state must show its presence. The

court tells the jury that they may presume that such intent existed. The acts which really caused the abortion may be proven, and yet the defendant may have had an innocent intent in doing those acts. He may have operated on her, and the jury may have found that he did all the acts testified to respecting the abortion, yet that would not be sufficient on which to convict him unless he did those acts with the intent to procure a miscarriage." He also cites the case of State v. Denny, 17 N. D. 519, 117 N. W. 869, in which this court held that an instruction was erroneous which, in defining the term "feloniously," defined it as an intent to commit a felony, or an intent to commit an unlawful act which might result in the commission of a felony. On the last point, however, we have merely to suggest that in the case referred to the court used the word "might," while in the case at bar the court used the words "which, when done, would *result*," and in this difference there is a palpable distinction. So, too, even in the case referred to, the court held that the instruction given was not prejudicial.

The basic trouble with counsel in the whole matter is that he does not give, in his brief, the whole instruction, nor look upon the instruction as a whole. He seems to ignore the fact that though a miscarriage which is unnecessary to preserve the life of the mother is an essential ingredient of the crime charged in the information in the case at bar, the crime charged is not the bringing about of an abortion, but the crime of murder in the second degree. In instructing the jury on the point that the law presumes that a person intends the ordinary consequences of his voluntary act, the court was merely instructing upon the general proposition that in such cases, that is, cases where the crime of murder in the second degree is charged, an actual intent to bring about the death of the woman is not necessary in order that the wilfulness or felonious intent necessary to the crime of murder may be proved. If the miscarriage, indeed, was not necessary, to preserve the life of the woman, and if it resulted in her death, then the rule that one intends the natural consequences of his act could be made to apply in so far as the charge of murder in the second degree was concerned, even though there was no intention to kill the deceased. The court was merely instructing upon the wilfulness and the felonious intent necessary to the committing of the real crime charged, which was murder in the second degree. See §§ 8789 and 8796, Rev. Codes 1905. We

realize fully that before the commission of the crime charged (murder in the second degree) could be proved, there must first have been proof that the original act was unlawful; that is to say, that a felony had been committed, and that the jury must have been satisfied that the miscarriage was attempted or brought about, and was not necessary to preserve the life of the woman. On this point, however, the jury was fully and repeatedly instructed, and having been so instructed, the remaining portion of the charge was not prejudicial. The instruction as a whole on the proposition is as follows: "The defendant is charged with the crime of murder in the second degree, and the term 'murder' includes homicide, or the killing of a human being. Under our statutes, gentlemen, homicide is defined as the destruction of the life of a human being by the act, agency, procurement, or culpable omission of another, and where such homicide is perpetrated wilfully, unlawfully, and feloniously without any design to effect death by a person engaged in the commission of a felony, then it becomes murder, and if the felony charged is the felony of procuring an abortion, then it is murder in the second degree, and if this is proven, the consent of the deceased to procuring the abortion is no defense. If murder is committed, any person concerned in the commission of the crime is no less guilty because someone else may have been present and assisted, or the deceased consented, whether the others be prosecuted with him or not. I have stated to you that homicide, that is, the destruction of the life of a human being by the act, agency, or procurement of another, when perpetrated by one engaged in the commission of a felony, is murder, even though such person did not have a design to effect the death of the person, when done wilfully, unlawfully, and feloniously. In connection with this, the court instructs you that the word 'feloniously' imports any act or omission declared or defined to be a felony by the laws of this state. The state charges that the defendant in this case took the life or caused the death of one Lillian Drury, and destroyed her life at a time when he was engaged in the commission of a felony, though he did not have any design to effect her death, and the state further charges that the felony which the defendant was engaged in committing on the said Lillian Drury was the felony of procuring an abortion. Now, gentlemen of the jury, every person who uses or employs any instrument or other means whatsoever upon any pregnant

woman, with the intent thereby to procure the miscarriage of such woman, unless the miscarriage is necessary to preserve her life, is guilty of a felony under our statutes, and if, while engaged in the commission of a felony, or as the direct result of the commission of a felony, he thereby destroys the life of the said pregnant woman, he is guilty of murder in the second degree, even though he had no design or intent to cause her death. You, gentlemen of the jury, must determine from the evidence whether or not a miscarriage was or was not necessary in order to preserve the life of the said Lillian Drury, provided that a miscarriage was in fact procured or attempted to be procured by the defendant as charged in the information, *and if a miscarriage was attempted by the defendant, and it is shown to your satisfaction, as required that it was not* necessary, and that death resulted from this act, and that this act was performed by the defendant, then he would be no less guilty even though he had no intent whatsoever or any idea of causing her death. It is not necessary for the state to show or to prove that a miscarriage was in fact produced or procured by the defendant. It is sufficient if the state shows, so far as the procurement of the miscarriage is concerned, that she came to her death by reason of the employment upon her person by the defendant of any instrument whatever with an intent on his part to procure the miscarriage, *unless said miscarriage was necessary to preserve her life.* The state is not required to prove any motive on the part of the defendant for any act the state shows he did, though the presence or absence of motive may be weighed by you if you desire. The burden of proof in this case, as in all criminal cases, is upon the state to prove to your satisfaction, beyond a reasonable doubt, all the material allegations of the information, but, gentlemen, upon a trial for murder, when the commission of the homicide by the defendant has been proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed amounts to manslaughter, or that the crime was justifiable or excusable. This burden of proof resting upon the state applies to all of the material allegations of this information, which includes the necessity of showing that the miscarriage, if any was procured, was not necessary to save the life of Lillian Drury, but in this respect I charge you that the state is not

required to prove the non-necessity by any particular form of evidence. If all of the facts and circumstances in this case sufficiently establish this fact by the degree of proof required, then the state is not required to prove this by any particular form of proof." We cannot say that we approve of the form in which the instructions were given. We cannot find, however, that their giving constituted reversible error.

Appellant also takes exception to the charge of the court to the effect that "if any witness has been shown to have wilfully and knowingly testified falsely in regard to some material matter, you are at liberty to disregard his testimony entirely unless corroborated by credible testimony." He argues that this instruction singles out the testimony of the defendant, given in this case, and that the court in this instruction referred directly to the defendant and the testimony given by him. There is absolutely no merit in this objection. There were a number of other witnesses, and there was no direct reference to the defendant. Appellant further excepts to the charge, for the reason that it omits the qualifying clause, "unless corroborated by the facts and circumstances proven on the trial." There is no merit, however, in this contention. The cases cited by counsel, indeed, in support of his proposition, themselves support, rather than condemn, the instruction. They are: Mercer v. Wright, 3 Wis. 645; Allen v. Murray, 87 Wis. 41, 57 N. W. 979; Morely v. Dunbar, 24 Wis. 185; Hillman v. Schwenk, 68 Mich. 293, 36 N. W. 77; Blotcky v. Kaplan, 91 Iowa, 352, 59 N. W. 204; State v. Musgrave, 43 W. Va. 672, 28 S. E. 813; F. Dohmen Co. v. Niagara F. Ins. Co. 96 Wis. 38, 71 N. W. 69. It is true that the last two cases cited hold that the instructions given were erroneous, but this was not on account of any play on words in regard to the meaning of the word "credible." In the Dohmen Case it was because testimony was required by the instruction to be corroborated by witnesses, when, as a matter of fact, one credible witness might have been sufficient, while in the Musgrave Case the court took the position that the giving of an instruction on the subject at all would be an invasion of the province of the jury. Almost the identical instruction was given in the case of State v. Winney, 21 N. D. 72, 128 N. W. 68.

Exception is also taken to the instruction: "Now, gentlemen of the jury, one witness, Nellie Gandie, has gone on the witness stand and given her testimony, and the defendant in this case, through this case,

charges her with being an accomplice in the crime, if any crime was committed." Counsel argues that in another part of the charge, to which we have before referred, the court told the jury that a crime had been committed, and here tells the jury that the defendant claims the said Nellie Gandie to be an accomplice in the crime. In other words, that he tells the jury "that Nellie Gandie aided, assisted, and, by so doing, became an accomplice, and that the defendant admits his participation in the crime by reason of calling her his accomplice." This contention is hardly borne out by the language of the instructions. If, in the prior portion of the charge, there were any suggestions that a crime had been committed, this, as we have before stated, was merely in response to the suggestions and proposed instructions of the defendant himself; for he, time and again, proposed instructions which assumed the commission of a crime, while in the particular charge before us the suggestion is negatived by the use of the words, "if any crime is committed." If the language used had been that "even if the jury find from the evidence that a crime has been committed, still the defendant maintains that Nellie Gandie would be an accomplice thereto, and her testimony, therefore, unless corroborated, would be inadmissible," we think there could have been no objection to the instruction, and this was the meaning the instruction as a whole clearly conveyed. We must remember that the defendant himself, by several proposed instructions, asked that the jury be instructed upon this phase of the case, and himself suggested the language to which he now objects. We cannot read the instructions as a whole and believe that any prejudice was committed in this respect.

Exception is also taken to that part of the charge in which the court instructed the jury: "But, gentlemen, upon a trial for murder, when the commission of a homicide by the defendant has been proven, the burden of proving circumstances of mitigation or that justify or excuse it devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed amounts to manslaughter, or that the crime was justifiable or excusable." It is claimed that this instruction is perfectly proper in a case where a defense is interposed such as insanity or self-defense, but not in a case like the one at bar; that "it is misleading and places the burden of proof upon the defendant, compelling him to prove such things as will

excuse, such as that he had no intent to procure a miscarriage, or that it was necessary to preserve her life." Defendant maintains that the burden in this case regarding justification or excuse does not shift, and can never be placed on the defendant's shoulders. He maintains that had the case been simply one of procuring an abortion, and the court had charged, "The commission of the abortion being proven, the burden of proving circumstances of mitigation, or that justify or excuse the defendant devolves on the defendant," such a charge would have been erroneous, and cites the cases of People v. Gordon, 88 Cal. 422, 26 Pac. 502; People v. Mize, 80 Cal. 41, 22 Pac. 80; People v. Rodrigo, 69 Cal. 601, 11 Pac. 481, 8 Am. Crim. Rep. 53. It would seem, however, that the cases cited are hardly in point. The case of People v. Gordon, for instance, is a case where the charge is assault with intent to commit murder, and is not a case of homicide. The same is true of People v. Mize, while the case of People v. Rodrigo is a case of an assault with a deadly weapon. We do not commend the portion of the instruction objected to. In fact, we do not believe that it has any place, or should have been given in a case of the nature of the one at bar. We do not, however, believe that the giving of it in any way prejudiced the defendant. Just before the use of the words complained of, the court had explicitly charged the jury that the burden of proof was upon the state to prove all of the material allegations of the complaint, and that among them was the non-necessity of the miscarriage. The paragraph complained of starts out by again telling the jury that "the burden of proof in this case, as in all criminal cases, is upon the state to prove, to your satisfaction beyond a reasonable doubt, all the material allegations of the information," and ends with the statement: "This burden of proof resting upon the state applies to all of the material allegations of this information, which includes the necessity of showing that the miscarriage, if any was procured, was not necessary to save the life of Lillian Drury." It is true that between these portions the objectionable language, "but, gentlemen, upon a trial for murder, when the commission of the homicide by the defendant has been proven, the burden of proving circumstances of mitigation or that justify or excuse the defendant devolves upon the defendant," was used. In this, however, as we have before said, there can hardly have been any prejudice to the defendant. In the instruction as a whole the

court charged the jury that the defendant could not be found guilty in any event, unless it was proved, beyond a reasonable doubt, that the miscarriage was unnecessary, and that the burden of showing this fact was upon the state. It then stated to the jury, in effect, that even if this fact was proved, that is, that the miscarriage was not necessary, there was still a defense of justification, mitigation, or excuse, but in this case the burden of proof was upon the defendant. The defendant, as a matter of fact, had no such added defense, and the remarks in regard to the burden of proof were absolutely harmless and immaterial. If he had had such a defense the instruction would have been correct. Rev. Codes 1905, § 10023. The case was not one which came within §§ 8828, 8829, and 8830 of the Code, and in which justification, mitigation, or excuse could be pleaded. There was, in short, no pretense or defense that the act was done "in lawfully correcting a child or servant, etc.". The instruction, in short, gave to the defendant an added defense which the law did not grant him, and its giving was to his advantage rather than to his disadvantage. Rather than tending to harm the defendant, it was calculated to leave the jury to infer that even though the state proved, beyond a reasonable doubt, that the defendant performed the abortion, and that it was not necessary, he still could be heard in mitigation and justification of his offense. The instruction, in short, was erroneous, but the error was to the advantage, and not to the disadvantage, of the defendant.

Exception is, we know, also taken to the portion of the charge which instructs the jury that "this burden of proof resting upon the state applies to all of the material allegations of this information, which includes the necessity of showing that the miscarriage, if any was procured, was not necessary to save the life of said Lillian Drury, but in this respect I charge you that the state is not required to show this non-necessity by any particular form of evidence. If all the facts and circumstances in this case sufficiently establish this fact by the degree of proof required, then the state is not required to prove this by any particular form of proof." It is argued that the jury could not have understood the charge in any other light than that, after the state had shown the commission of the homicide by the defendant, the defendant must show excuse or justification and the non-necessity of procuring the miscarriage to save her life was one of the things that must

be shown by the defendant. A mere reading of the instruction, however, will disprove this assertion.

So, too, the point is made by the counsel for the state that none of the errors in the instructions, if any, should be considered, as no objections or exceptions to the charge were filed within the time required by the statute or order of the court. A written charge was delivered in the case, but in submitting the same the court said: "The court at this time will submit to the jury a written charge, but owing to the fact that there is but one counsel for the defense, and that his time has been thoroughly taken up during the progress of the trial so that he has not had proper and sufficient time to consider the charge in order to file his written exceptions thereto, which he would be required to do before the charge was given, the court will permit the defendant to consider the charge the same as if it had been delivered orally, and save to him his right to file exceptions thereto the same as if it were an oral charge." The statutes upon the subject are as follows: Section 9987: "Upon the close of the trial all instructions given or refused, together with those prepared by the court, if any, must be filed with the clerk, and except as otherwise provided in the next section, shall be deemed excepted to by the defendant. If the charge of the court, or any part thereof, is given orally, the same must be taken down by the official stenographer, and shall be deemed excepted to by the defendant, and the same, as soon as may be after the trial, must be written out at length and filed with the clerk of the court by the stenographer thereof; provided that in case the defendant is acquitted by the jury, the oral instructions need not be transcribed or filed with the clerk; but exceptions in writing to any of the instructions of the court in any manner given, or the refusal of the court to give instructions requested, may be filed by the defendant at his discretion, with the clerk of the court, within twenty days after the instructions are all filed as herein provided." Section 9988: "The court may, in its discretion, submit the written instructions which it proposes to give to the jury, to the counsel in the case for examination, and require such counsel, after a reasonable examination thereof, to designate such parts thereof as he may deem objectionable, and such counsel must thereupon designate such parts of such instructions as he may deem improper, and thereafter only such parts of such written instructions so designated shall

be deemed excepted to or subject to exceptions." Section 10078: "The instructions requested by the defendant and refused, or by the prosecutor and given, and all the instructions given to the jury by the court in writing, or orally and written out by the stenographer of the court, and filed with the clerk, except as otherwise provided in § 10006, are deemed excepted to, and need not be embodied in the statement of the case, but the same and each of them, with the indorsements, if any, showing the action of the court thereon, form a part of the record of the action. The decision of the court upon any matters of law in this article declared to be deemed excepted to need not be embodied in any statement of the case, and forms a part of the record of the action. Any statement of the case, or exception settled, certified, and filed as provided in this article, also forms a part of the record of the action. Any error committed by the court in or by any decision, ruling, instruction, or other act, and appearing in the record of the action, may be taken advantage of upon a motion for a new trial, or in the supreme court on appeal."

We believe that the point of counsel for the state is well taken The instructions were written instructions. As a matter of right, and under § 9988, defendant could have been required to except thereto before their presentation to the jury. As a matter of grace he was permitted to "consider the charge the same as if delivered orally, and save to him his right to *file* exceptions thereto the same as if it were an oral charge." It will be noted that he was required to *file* his exceptions. There was no intimation that exceptions would be deemed taken. The court must have referred, not to the former, but to the latter, part of § 9987, where, alone, the filing of exceptions is spoken of, and in which the time is limited to twenty days. We have, however, as will be seen, in this case taken the trouble of considering the instructions. We have done so, however, for the sake of vindicating the law and the judgment of the trial court, rather than because we were required or authorized to do so. We want, however, to be expressly understood as not approving of the instructions as a whole as given in this case, especially those in relation to the defense of justification and excuse. Our holding is rather that there was no prejudice to the defendant, than that the instructions were models, or were technically correct.

But it is claimed that the evidence does not sustain the verdict. We

do not, however, so hold. A number of medical witnesses testified to the evidences of a recent abortion, and that such abortion was, in their opinion, the occasion of the death of the deceased. The opportunity for its performance is proved; the fact of an operation upon the womb by the defendant, which was concealed from the doctors afterwards called into consultation, and the lack of necessity for the bringing about of a miscarriage, is fairly established. The absence of necessity, indeed, to save a woman's life, may be shown by circumstantial evidence. In fact, this is often the only method by which such lack of necessity can be proved. Dixon v. State, 46 Neb. 298, 64 N. W. 961. Some courts hold that in the absence of evidence to the contrary the state may, in the first instance, rest on the presumption existing against the necessity, and in support of this proposition the supreme court of Connecticut has said: "We think it is equally a matter of common experience that the ability to bear and bring forth children is the rule, and that the necessity of procuring an abortion or miscarriage in order to save the life of the mother or child is the rare exception; that the presumption is against such necessity; and that the state in the first instance, and in the absence of evidence to the contrary, may rest on that presumption in cases brought under the statute in question." State v. Lee, 69 Conn. 186, 199, 37 Atl. 75; State v. Schuerman, 70 Mo. App. 518. Practically all of the courts, though there are some minority opinions, hold that all that is required of the prosecution in the first instance is to make out a prima facie case, and in conformity with this rule the supreme court of Wisconsin has held that evidence of an operation on a healthy woman at her request to procure an abortion, and that that abortion was in fact procured, and that she died in consequence thereof, raises the irresistible inference that the operation was not necessary to preserve the life of the mother. Hatchard v. State, 79 Wis. 357, 48 N. W. 380; People v. Balkwell, 143 Cal. 259, 76 Pac. 1017. Even the case of State v. Aiken, 109 Iowa, 643, 80 N. W. 1073, which by some is supposed to hold to a contrary rule, lays emphasis upon the fact that in that case there was no evidence of illicit intercourse, no showing as to the fact of whether the woman was married or unmarried, and nothing to indicate the condition of her health except that she walked to the office of the defendant two or three times.

The testimony of Nellie Gandie is that, except for the hemorrhoids,

Mrs. Drury appeared well and healthy and normal; and there is nothing to contradict this testimony, at any rate until she had been under the care of the doctor for some days. These facts, with the added fact of the failure of the defendant to acquaint Drs. Gustafson and Gibson with the fact of the operation, if any, and with anything of the history of the case except the taking of the morphine tablets and the operation for piles, would seem to bring it within the authorities cited. So, too, there is no little authority for the proposition that when, as in the case at bar, there is no pretense or defense that the miscarriage was necessary, but the defense consists in a denial that such miscarriage was accomplished at all, no direct proof of the necessity is incumbent upon the state. "The guilty intent of the defendant," says the supreme court of Oregon in State v. Glass, 5 Or. 73, 85, "is presumed if the statutory ingredients of the crime are shown. The mind of man can only be explored by weighing his conduct. It devolved upon the state to show that the removal of the fetus was not necessary to preserve the life of deceased, and the degree of certainty with which this is required to be shown is such that no competent person can be presumed to have believed the act necessary. In this case, had the jury found that the circumstances were such as to induce in a competent person a belief that the removal of the fetus was necessary, or had the testimony left that fact in doubt, this would have been sufficient to create a reasonable doubt in their own minds as to the necessity of the act, and the prisoner must have been acquitted. A case might arise where there were circumstances at the time of treatment calculated to lead to a conclusion which subsequent developments would show was erroneous. But this is not such a case, and the court may refuse to instruct the jury where there is no testimony to which such instructions can apply. There was no attempt made to show, nor was there anything tending to show, that the act charged as a crime was or appeared to be necessary to preserve the life of the deceased. The theory of the defense was that defendant had no agency in the removal of the fetus, and not that its removal was, or was thought to be, necessary to save the life of the mother. This is shown by the testimony contained in the transcript, where it is attempted to be shown that deceased procured her own death by the use of drugs prior to her meeting with the defendant. More than this, every fact relied upon by the prosecution

to show the act unnecessary was within the reach of defendant if he is a competent physician, at the time he treated deceased."

In the case at bar, as we have before intimated, the defense was not that the procuring of the miscarriage was necessary, but that no miscarriage was accomplished by the defendant at all, and it seems to come clearly within the rule last cited.

As far as the *corpus delicti* is concerned, it is well established that the same may be proved by circumstantial evidence, and it would seem that the proof in this case was sufficient. There was evidence of a large hole or aperture in the uterus. There is also some evidence that this tear could not have been accomplished by the woman herself. There is evidence of an opportunity for the accomplishment of the crime on the occasion of the first visit to the doctor, even if the jury believed that the use of the curette and of the dilator had nothing to do with the same. The commission of the crime can be inferred from the use of the curette and the dilator, coupled with the evidence of the size of the wound, and the testimony of the experts as to the fact of pregnancy and of the recent miscarriage. These matters are matters for the jury, and not for the court. See Seifert v. State, 160 Ind. 464, 98 Am. St. Rep. 340, 67 N. E. 100. The same is true of the commission of the crime generally. State v. Lilly, 47 W. Va. 496, 35 S. E. 837; Com. v. Drake, 124 Mass. 21; State v. Minard, 96 Iowa, 267, 65 N. W. 147; People v. Balkwell, 143 Cal. 259, 76 Pac. 1017; Clark v. People, 224 Ill. 554, 79 N. E. 941; Cook v. People, 177 Ill. 146, 52 N. E. 273; Peoples v. Com. 87 Ky. 487, 9 S. W. 509, 810; Howard v. People, 185 Ill. 552, 57 N. E. 441.

Objection is also made to the refusal of the court to grant a new trial on the ground of newly discovered evidence, the alleged evidence being that of one Violet Simmie, who made an affidavit to the effect that at a conversation which took place between herself and the deceased in February, 1911, while the deceased was at Milton, deceased told her that she had taken medicine and used instruments upon her womb for the purpose of producing an abortion, and that she had not told Dr. Reilly what she had done, and that Dr. Reilly did not know what she had done, and that she was afraid to tell him; that both Violet Simmie and Miss Gandie advised and told Mrs. Drury to tell Dr. Reilly at once what she had done; Dr. Reilly filing an affidavit to the effect that

this evidence was not discovered until about the 20th day of February, 1912. Such evidence, however, was merely cumulative to the former evidence of Nellie Gandie, and was not, in itself, a ground for a new trial. See 14 Enc. Pl. & Pr. 791. We know that there are cases where the mere fact that the evidence has been cumulative has not been reason for refusing a new trial. In them, however, the reason given is that the new evidence tended to make "doubtful cases clear." Hart v. Brainerd, 68 Conn. 50, 35 Atl. 776; Andersen v. State, 43 Conn. 514, 21 Am. Rep. 669; Keet v. Mason, 167 Mass. 154, 45 N. E. 81; Preston v. Otey, 88 Va. 491, 14 S. E. 68; Barker v. French, 18 Vt. 460; Ellis v. Ginsburg, 163 Mass. 143, 39 N. E. 800; Kochel v. Bartlett, 88 Ind. 237. We cannot believe that the introduction of this testimony would have in any way clarified the case at bar, or influenced the conclusion of the jury.

Another and controlling reason for refusing a new trial on this point, and on the sufficiency of the evidence generally, is that, although a notice of an intention to move for a new trial was given in the district court, the motion was in fact never made by the defendant, and never presented by him for decision.

The judgment of the District Court is affirmed.

FISK, J. (concurring specially). I concur in the affirmance, but dissent from that portion of the opinion to which ¶ 12 of the syllabus refers.

SPALDING, Ch. J. I concur, except that I express no opinion on the instructions to the jury. The conclusion announced in ¶ 12 of the syllabus meets with my approval, and renders any opinion on instructions unnecessary.

## On Rehearing.

BRUCE, J.: Upon a rehearing and upon examining the judgment roll, we discover that although there is a statement that the trial court at no time extended the time for filing exceptions to the charge, the court did in fact and as a matter of law extend such time. The certificate of the court, which is attached to the roll, states among other

things that the trial judge certifies that: "The within and foregoing is a true and correct statement of the case, and contains the proceedings heard in the said trial and the exceptions of the defendant and his bill of particulars and specifications of error. Now, therefore, it is hereby ordered that the within and foregoing statement of the defendant, together with the proposed amendment of the plaintiff, state of North Dakota, that the same is correct and be allowed as and for the statement of the case in the above-entitled action, to be used in all further proceedings in said action." The record also shows that, prior to this time, an extension of the time to settle the case was allowed the defendant by the trial court provided that he filed his exceptions to the charge within a time limited. The certificate of the judge and this prior condition imposed upon the extension of the time for the statement of the case must be construed to be a waiver by that court of any limitation upon the time imposed at the trial for filing the exceptions to the charge, if any waiver there was. We must, therefore, on this rehearing, overrule the ruling made in § 12 of the syllabus and the statement in the main opinion upon which same is based, as the waiver, if any, has been excused by the trial court. Our attention has also been called to the fact, which also was not emphasized in the argument or brief of counsel, that though the first objection to the testimony of Dr. Semple, and in which he stated as an expert that in his opinion the death of the deceased was the result of blood poisoning and that she was pregnant a short time before her death, was based upon the proposition that it was in answer to a question which called for an opinion which itself was based upon an opinion, his objection was afterwards repeated in a form which added to the objections one that the doctor was called upon to invade the province of the jury.

The objection has much of suggestion in it, and is unquestionably supported by some of the authorities. It would probably be considered in Connecticut, Indiana, New York, and the Supreme Court of the United States. In Texas it would perhaps have once been considered (see Williams v. State, 37 Tex. Crim. Rep. 348, 39 S. W. 687), but hardly now (see Davis v. State, 54 Tex. Crim. Rep. 236, 114 S. W. 366; St. Louis South Western R. Co. v. Hall, — Tex. Civ. App. —, 81 S. W. 571). It would probably not be valid in Alabama, Arkansas, Delaware, Illinois, Indiana, Louisiana, Maine, Maryland, Massachusetts, Michi-

gan, Minnesota, Missouri, Ohio, Pennsylvania, West Virginia, Wisconsin, and England. It is true that counsel·for appellant cites cases from these states (Porter v. State, 135 Ala. 51, 36 So. 695; Gunter v. State, 83 Ala. 96, 3 So. 600; Page v. State, 61 Ala. 16; People v. Aikin, 66 Mich. 460, 11 Am. St. Rep. 512, 33 N. W. 828, 7 Am. Crim. Rep. 345; Luning v. State, 2 Pinney (Wis.) 215, 52 Am. Dec. 154; People v. Millard, 53 Mich. 63, 18 N. W. 563), as supporting his contention. These cases, however, have either been since overruled or are cases in which there was a material conflict in the testimony as *to the facts*. The real state of the law upon the subject is laid down in vol. 17, page 253, of Cyc., where it is said: "A desire to economize time has occasionally induced the court to permit a witness examined as an expert, to ascertain the facts directly from the evidence. In some jurisdictions, but not in all, where the facts are undisputed, an expert who has heard all the testimony may be asked for his judgment 'upon the evidence,' provided that he has heard the whole of it or is familiar with it, or even upon such part of it as is material to the inquiry. . . . In some jurisdictions the practice of allowing an expert witness to ascertain the facts directly from the evidence, instead of them being embodied in a hypothetical question, has been condemned and generally disallowed; and even where the practice is allowed it is subject to limitations. There are serious objections to any other than the hypothetical question: (1) The course under consideration cannot be adopted where the facts are disputed. The witness cannot properly be asked for his judgment as to disputed matters of fact, to comment on the evidence, or to include his 'understanding' of the evidence of another witness or as to the credibility of a witness. (2) The practice unnecessarily invades the province of the jury." The overwhelming weight of authority is to the effect that such questions and evidence are permissible, provided that there is·no material conflict as to the basic facts, a clear and radical distinction being made between a conflict as to the facts and a conflict as to the conclusion which the different witnesses have drawn from them. In North Dakota we have followed the majority rule as laid down in Cyc. In the case o° Walters v. Rock, 18 N. D. 45, 54, 115 N. W. 511, this court said: "This question was also objected to when asked of the same witness: 'You read the testimony of Dr. Rea, and you heard the testimony of Dr. Rogers read,

you heard the testimony of Mr. Rock in regard to the condition of his lip; now from the testimony of Dr. Rea, Dr. Rogers, and Mr. Rock, state whether or not in your opinion Mr. Rock was suffering from a cancerous growth on his lip at the time he was treated by Dr. Rea in May, 1904.' The objection to this question was that it called upon the witness to pass upon the credibility of the witnesses in case of conflict. On examination of the evidence given by these witnesses, we find no conflict as to the facts stated by them. The conclusion or opinion of Dr. Rea as to what defendant was suffering from differed from that of the other medical witnesses, but as to the facts and conditions of the ailment there was no difference. For this reason the evidence was not objectionable, and did not call upon the witness to decide facts properly for the jury. The form of the question is not to be commended. It is a safer practice to incorporate all the facts relied on in a hypothetical question." We have examined the evidence in the case at bar with a great deal of care, and fail to discover any material conflict in the basic facts testified to by the physicians in the case; the conflict is over the conclusions merely. Such being the case, there is no reversible error.

Counsel for appellant also reargues his former objections to the portion of the charge which states: "I charge you, gentlemen of the jury, that our law presumes that a person intends the ordinary consequences of his voluntary act, and such a presumption may be satisfactory if uncontradicted. The law further presumes that an unlawful act was done with an unlawful intent, and if the state has shown to your satisfaction beyond a reasonable doubt that an unlawful act was committed by the defendant, that said unlawful act, or acts, was the act charged in this information, then you are at liberty to presume that the same was done with an unlawful intent, and that he intended the ordinary consequences of his voluntary act unless the same is contradicted." After reargument, however, we still can find no particular fault with the portion of this instruction which charges that one intends the ordinary consequences of his voluntary act. The basic offense is defined in § 8912, which provides that "every person who administers to a pregnant woman, . . . or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable

by imprisonment in the penitentiary," etc. One of the main points at issue was whether the defendant intended to procure the miscarriage, and the question was from what might the jury infer such intention or how might the same be proved. Even if the intent to procure the miscarriage was proved, its non-necessity was not necessarily also proved, and this really was the crucial matter, and on this the jury was fully instructed that the burden of proof was upon the state. In instructing the jury that one intends the ordinary consequences of his voluntary act, the court merely instructed the jury that if they believed that the defendant inserted an instrument into the womb of the deceased, and was the occasion of the puncture in the uterus which the post mortem examination disclosed, and that the ordinary result of such rupture and such insertion would result in a miscarriage, and that in fact such miscarriage resulted therefrom, then the intent to procure the miscarriage could be implied. On this point the supreme court of Colorado in the case of Dougherty v. People, 1 Colo. 514, said: "It is the administering of the noxious substance, or the use of the instruments with intent to produce a miscarriage, that makes up the crime—and as to the intent it may be remarked that it is a well-settled rule of law that a sane man, a voluntary agent acting upon motives, must be presumed to contemplate and intend the necessary, natural, and probable consequences of his own acts. If, therefore, one voluntarily or wilfully does an act which has a direct tendency to destroy another's life, the natural or necessary conclusion from the act is that he intended so to destroy such life. . . . So, when a physician inserts into the womb of a woman pregnant with child instruments calculated to produce irritation and serious derangement of the female economy, and abortion follows, the intention to produce that result is a necessary conclusion from the act." We are unable to see wherein this portion of the instruction did not correctly state the law upon the subject; nor do we believe that the defendant can complain of the same in view of the fact that the jury was repeatedly instructed that the burden of the proof was on the state to prove the non-necessity of such miscarriage, as well as all the material allegations of the information. As far as the portion of the charge is concerned which tells the jury that "the law presumes that an unlawful act was done with an unlawful intent, and if the state has shown to your satisfaction beyond a reasonable doubt that

an unlawful act was committed by the defendant, that said unlawful act, or acts, was the act charged in the information, then you are at liberty to presume that the same was done with an unlawful intent," we are quite satisfied that the same was not only uncalled for and un- necessary in this particular case, but that it should not be given in cases of this kind at all. We hold, indeed, that under § 8912 and ¶ 3 of § 8789, Rev. Stat. 1905, the only criminal intent involved is the intent to procure or bring about a miscarriage which is not necessary to save the life of the woman, and that the burden of proving this non-neces- sity is upon the state. State v. Longstreth, 19 N. D. 268, 121 N. W. 1114, Ann. Cas. 1912D, 1317. On this, however, the jury was fully instructed, and upon reading the whole of the charge we cannot, with- out indulging in a metaphysical refinement, which the ordinary mind is unable to follow, and which is elusive even to the mind of the tech- nical lawyer, conceive of any way in which the jury could have been misled or the defendant prejudiced. The court undoubtedly had in his mind the implied malice or intent which was a prerequisite to the crime of murder at the common law. In the case at bar it would seem that this implied malice was not necessary to be proved or presumed, and the instruction therefore was unnecessary. That it was unneces- sary, however, does not prove in any sense that it was harmful, and on reading the charge as a whole we cannot believe that it was so. The instruction in short seems to have been thought necessary by the court on account of the language used in State v. Belyea, 9 N. D. 353, 83 N. W. 1, in which this court said: "Reference is here made to the re- peated employment of the phrase, 'maliciously, wilfully, and of their malice aforethought.' These words import and correctly describe a de- liberate homicide. In other words, they constitute the best possible de- scription of motive in the crime of murder in the first degree, nor are such words either necessary or proper in describing the crime defined by § 7177 (Rev. Codes 1895). To that offense 'malice aforethought' is not essential. On the contrary, that statutory crime may be fully consummated without any criminal purpose and by one animated only by kindly motives. The offense is committed if the designated means are used upon a pregnant woman with the intent to procure the mis- carriage of such woman, when such miscarriage is not in fact neces- sary to save the life of the woman. The law leaves it for a jury to de-

termine whether or not any miscarriage was necessary to save the life of the pregnant woman, and if, in the judgment of twelve men, a miscarriage of the woman was not necessary to save her life, a verdict of guilty may be returned regardless of the motives governing the accused. It is therefore entirely clear that words which are adapted only to a description of murder in the first degree are wholly out of place and confusing when used to describe the minor offense described in § 7177." In giving it, the trial judge undoubtedly was merely seeking to make clear to the jury the fact that, though the crime charged was that of murder in the second degree, and not the unlawful bringing about of the miscarriage, no specific intent was necessary to be proved to accomplish that murder, but the intent to procure a miscarriage which was unnecessary was all that needed to be proved. We do not approve of the instruction, but we do not think that its giving was a reversible error.

The same is true of the instruction, also excepted to by the appellant, which states: "But, gentlemen, upon a trial for murder where a commission of homicide by the defendant has been proved, the burden of proving circumstances of mitigation or that justify or excuse, that devolves upon the defendant unless the proof on the part of the prosecution tends to show that the crime committed amounts to manslaughter, or that the crime committed was justifiable or excusable." This instruction, we believe, has no place in a case like the one at bar. In order to bring the prosecution within ¶ 3 of the above section, which provides that a homicide may be committed "when perpetrated without any design to effect death by a person engaged in the commission of any felony," the state must allege the lack of design to effect the death, and must prove and allege the commission of the subsidiary felony. In the case at bar no felony was committed unless the operation was unnecessary, and the burden of proving this non-necessity was upon the state. There was, therefore, no justification to be proved. Even in a case where the instruction would have been proper, it should have contained the qualification that if, after consideration of all of the evidence in the case, the jury believed the defendant was justifiable or excusable in his acts, or if they entertained a reasonable doubt upon this subject, they should find him not guilty. See Williams v. State, — Okla. Crim. Rep. —, 131 Pac. 179. We cannot, however, believe

that the charge was prejudicial. That the state was compelled to prove beyond a reasonable doubt all of the material allegations of the complaint was repeatedly emphasized to the jury. If these facts were proved, the defendant had no justification or excuse that he could plead or prove. The only effect that the charge could have had, therefore, on the jury would have been to have made them believe that even if the state proved all the material allegations of the complaint, that is to say, the fact of the criminal operation by the defendant, its nonnecessity, and the death of the deceased as a consequence thereof, that still there was a defense of justification or excuse which could be relied upon by the defendant. It, in fact, was beneficial to the defendant, and not prejudicial, and though erroneous, was not reversible error. It is the duty of this court to insist that a defendant has all the rights that the law allows to him, and that he shall have a fair trial, but it is not its duty to enter into the domain of metaphysics, and to imagine prejudice where no prejudice can in fact exist.

We can see no reason for receding from our former position in this case, and the order heretofore entered and affirming the judgment of the trial court will stand.

Fisk, J. (dissenting). Upon further consideration of the questions involved in this case, I feel constrained to depart from the views which I formerly entertained and to vote for a reversal. I am unwilling to concur in the conclusion announced by the majority, that the errors in giving the instructions complained of were nonprejudicial, and this is especially true as to the last instruction to which reference is made in the foregoing opinion. The giving of such instruction having concededly constituted error, it is presumed to have been prejudicial unless the contrary is made to appear, the burden of showing which rests upon the respondent, and as I view it there is no way of showing nonprejudice. We cannot say that the jury did not get the impression from such instruction, that the burden was cast upon the defendant of proving justification for his acts, by showing that it was in fact necessary to bring about a miscarriage of the deceased in order to save her life; or that he was actuated by proper motives in doing what he did, and that he had no intention of doing an unlawful act. It is, to my mind, quite natural and probable that the jury should have thus con-

strued the instruction, for they could not well have given it any other meaning. It, of course, needs no argument to show that if thus construed by the jury, such instruction was very prejudicial, as it would, in effect, cast upon defendant the burden of proving his innocence.