# CHARLES JUPITZ
## *v.*
## THE PEOPLE OF THE STATE OF ILLINOIS.

1. EVIDENCE — *mode of proving kind of property charged to have been received as stolen.* A party was being tried under an indictment for having and receiving twelve brass couplings, knowing them to have been stolen. It was held to be proper for the prosecution to introduce a brass coupling with the view to ask witnesses as to the similarity between the stolen ones and the one thus produced, and thereby to identify and prove the kind of article stolen.

2. But that kind of proof was not necessary. Proof that the articles were brass couplings, and had been stolen, and the prisoner knew it, would have made out the case.

3. EVIDENCE — *testimony of experts.* A junk dealer, charged with receiving twelve brass couplings knowing them to have been stolen, was shown to have purchased the couplings at an inadequately low price, if they were adapted to present use as couplings. The identical couplings stolen were not produced on the trial, but the prosecution introduced another coupling, and witnesses spoke of the kind of articles stolen, comparing them in a general way with the one produced. It was held to be competent for the defendant to prove by witnesses who were machinists and brass finishers of large experience, that from common observation and without close inspection it could not be told whether boxes such as were shown in the case were perfect or imperfect; whether they were of any use for the purpose for which they were intended, or were merely good as old brass to remould. Such testimony would be proper as tending, at least, to destroy any presumption of guilt which would arise from the inadequate price paid if the coupling were fit for use, it appearing the purchaser gave no attention to the articles when he bought them.

4. CRIMINAL EVIDENCE — *proof of good character of a party charged with crime.* The more modern decisions in criminal cases go to the extent that, in all criminal cases, whether the case is doubtful or not, evidence of good character is admissible on the part of the prisoner.

5. Proof of this kind may sometimes be the only mode by which an innocent man can repel the presumption of guilt arising from the possession of stolen property. It is not proof of innocence, although it may be sufficient to raise a doubt of guilt.

6. In this case, a junk dealer was charged with receiving stolen goods, knowing them to have been stolen. It was in proof that he purchased some goods which had been stolen, but there was no direct proof that he knew they were stolen, only a presumption of guilt might arise from the inadequacy of the price paid, and that depending upon the fitness of the articles bought for the purpose they were

intended, which did not clearly appear. The good character of the accused was considered an important element of defense in such a case, and should raise a doubt of guilty knowledge on his part.

7. INSTRUCTIONS — *should not assume the guilt of the accused.* A party on trial upon a criminal charge asked the court to instruct the jury that, if they found from the evidence that the defendant bore a good character for honesty, it should have great weight in his favor. The court qualified the instruction by adding, "if the jury believe there is any doubt of his guilt." The qualification was objectionable on the ground that it amounted to a declaration by the court that there was no doubt of the prisoner's guilt.

WRIT OF ERROR to the Recorder's Court of the city of Chicago; the Hon. EVERT VAN BUREN, Recorder, presiding.

Charles Jupitz was indicted in the court below for receiving stolen property, knowing it to be such. The charge in the indictment was, that the defendant, "twelve brass couplings of the value of three dollars each, the personal goods and property of the Michigan Central Railroad Company, for the gain of him, the said Charles Jupitz, unlawfully and feloniously did have and receive, the said personal goods and property before then having been feloniously stolen, taken and carried away, he, the said Charles Jupitz, then and there, well knowing the said goods and chattels to have been feloniously stolen, taken and carried away, contrary to the statute, &c."

Upon the trial, it appeared that the defendant was the keeper of a junk shop in the city of Chicago, and purchased the brass couplings in question for the sum of three dollars. The fact was established that the property was stolen, and whether the defendant knew it was stolen at the time he purchased it was the question upon which the case turned.

There was no direct proof on that point. The party who sold the couplings to the defendant acknowledged, on the trial, that he had stolen them, but stated that he did not inform the defendant of that fact when he sold them to him.

The prosecution introduced as a witness *John Pfinder*, who testified: that he was an employee of the Michigan Central Railroad Company; that they had some brass couplings belonging to an engine hose, which were in a little shed or shop; that

these couplings, ten or twelve in number, were taken away; they were like the one then in court, and were worth from $2.25 to $3 each.

Here the witness was handed a brass coupling for the purpose of identifying those which were missing, to which the defendant objected, upon the ground that the prosecution should show the property stolen, and not prove the property or its value by comparison. The court overruled the defendant's objection, and exception was taken.

The witness said the missing couplings were never perfect.

Other witnesses, who were present when the couplings were sold, spoke of the character of them, as compared with the one in court, thus: "three or four of the brasses were like the one here; they were like these, only they had small shoulders; the others were different." Another said: " I think they were like that; they were all just like that, except one, which was rough." The one who sold them to the defendant said : "the brass I sold him was some like that, and some had the corners come out."

The prosecution having closed their testimony, the defendant introduced several witnesses, by whom he established a good character for honesty up to the time of this transaction.

The defendant then called *Wm. Daily* and *Christopher Finnegan*, who were duly sworn as witnesses in said case, and by them and each of the said witnesses the defendant offered to prove that they were machinists and brass finishers of large experience, and that from common observation, and without close inspection, it could not be told whether boxes, such as were shown in the case, were perfect or imperfect; whether they were of any use for the purpose for which they were intended, or were merely good as old brass, to remold.

To the introduction of which evidence, and each and every part thereof, the people aforesaid, by their counsel, then and there objected, and the court sustained the objection and refused to permit the proof to be made and the testimony to be given to the jury; to which ruling and decision of the court, in refusing to permit said proof to be made and said testimony to

be given to the jury, the defendant, by his counsel, then and there excepted.

The defendant asked the court to give to the jury the following instructions:

3. "The jury are further instructed, that the evidence of the good character for honesty of the defendant should have great weight in determining as to his guilt or innocence; and if they find from the evidence that the defendant has heretofore and now bears a good character for honesty, it should have great weight in his favor."

But the court refused to give the instruction as prayed, and qualified the same by the addition of the following words at the close of said instruction, namely: "If the jury believe there is any doubt of his guilt." And as qualified, the court gave said instruction, to which decision and rulings, and each of them, of the court, in refusing to give said instruction without qualification, and in qualifying the same, and giving the same as qualified, the defendant excepted.

A verdict of guilty was returned by the jury, who found the value of the property stolen to be $30, and fixed the term of imprisonment of the defendant in the penitentiary at one year. A motion for a new trial was overruled, and judgment and sentence pronounced upon the verdict.

The defendant brings the case into this court upon writ of error.

Under the assignment of errors the questions presented are: *First,* whether it was proper to allow the prosecution to produce the brass coupling in court, with the view to enable the witnesses to speak of the character of the stolen ones by comparison. *Second,* whether the witnesses, Daily and Finnegan, offered by the defendant, should have been allowed to testify. *Third,* whether the court below erred in qualifying the third instruction asked by the defendant.

Messrs. FULLER & HAM and RUNYAN, for the plaintiff in error.

Mr. D. P. JONES, State's attorney, for the people.

Mr. Justice Breese delivered the opinion of the Court:

Upon the first point made by the plaintiff in error, that of the mode adopted by the court to identify the property stolen, we can perceive nothing objectionable. The indictment was for having and receiving twelve brass couplings, knowing them to have been stolen. Proof, coming up to the allegation, is all that is necessary in any case. The witnesses all concur that the couplings stolen were more or less like the one produced in court. This was sufficient to prove the kind of article. Suppose the charge had been for having and receiving twelve iron wagon boxes, knowing them to be stolen, and which may have been sunk in the lake, so that no one of them could be produced for identification, would it not be competent for the prosecution to bring into court a common iron wagon box and ask the witness if they were like that, or wherein they differed from it? Had the charge been twelve pistols, or any similar articles, why on what principle is it a pistol could not be introduced and the inquiry made as to similarity? But why introduce this kind of evidence at all? Proof that the articles were brass couplings that had been stolen and the prisoner knew it, would have made out the case.

The next point made by the plaintiff in error is, the rejection of the testimony of Daily and Finnegan.

When we regard the position the prisoner occupied, we can not but consider the testimony offered by these witnesses, of great importance.

It is in proof that the prisoner kept a junk shop on one of the principal streets in Chicago, and dealt in old brass and junk, generally. It is in proof, if the articles he bought were couplings, adapted to present use, a strong presumption of guilt arises from the fact that the price he paid was far below their real value as couplings. These witnesses were called to prove that they were machinists and brass finishers of large experience, and that from common observation, and without close inspection, it could not be told whether boxes (couplings) such as was shown in the case, were perfect or imperfect;

whether they were of any use for the purpose for which they were intended, or were merely valuable as old brass, to remold or melt over.

It is in proof, that the prisoner paid no attention to the articles, and that he had purchased articles of the same individual previously. They were brought in a bag, emptied out on the scales, weighed as old brass, paid for as such, and thrown into a barrel standing in the room. All this was done openly, publicly, in day light, in the usual course of business. Such testimony as that offered, would at least have had a tendency to destroy the presumption arising from the inadequacy of price, and should have been admitted.

The next point made by the plaintiff in error is the qualification of the third instruction asked for by him. As originally asked, this instruction was as follows: The jury are further instructed that the evidence of the good character for honesty of the defendant, should have great weight in determining as to his guilt or innocence; and if they find from the evidence that the defendant has heretofore, and now bears a good character for honesty, it should have great weight in his favor.

This was qualified by the court by the addition of these words: "If the jury believe there is any doubt of his guilt."

The instruction as asked may be objectionable on account of the epithet great, but as that was not the ground of the qualification, but on the ground as is inferable, that the court did not consider evidence of good character of any weight except in a doubtful case. The more modern decisions in criminal cases go to the extent, that in all criminal cases whether the case is doubtful or not, evidence of good character is admissible on the part of the prisoner. The latest case now recollected, is the case of *Hopps* v. *The People*, 31 Ill. 385. The qualification is objectionable further, on the ground that it amounts to a declaration by the court, that there was no doubt of the prisoner's guilt, which the court certainly did not intend, but the language might be liable to that construction with the jury.

We can hardly imagine a case where evidence of good character was a more important element of defense than this, and

in the language of the instructions was entitled to great weight. Proof of uniform good character, should raise a doubt of guilty knowledge, and the prisoner would be entitled to the benefit of that doubt. Proof of this kind may sometimes be the only mode by which an innocent man can repel the presumption of guilt arising from the possession of stolen goods. It is not proof of innocence, although it may be sufficient to raise a doubt of guilt. The court seemed to think it was entitled to no weight, unless taking the language used in the most favorable aspect, there was doubt of his guilt.

A strong *prima facie* case was made out by the prosecution, but it was not conclusive. If the court had told the jury, that his good character should be taken into consideration by them, and was entitled to much weight, a reasonable doubt of the prisoner's guilt, might have been raised which would have resulted in his acquittal.

We deem it unnecessary to discuss the evidence. The case will go to another jury, and we would not prejudice it one way or the other. For the reasons given the judgment must be reversed and a *venire de novo* awarded.

*Judgment reversed.*