STATE OF NORTH DAKOTA, Respondent, v. TILLIE SHOARS, Appellant.

(228 N. W. 413.)

Opinion filed December 10, 1929. Rehearing denied January 15, 1930.

*Leigh J. Monson,* for appellant.

*James Morris,* Attorney General, *John C. Pollock,* State's Attorney, and *James W. Pollock,* Assistant State's Attorney, for respondent.

BURKE, Ch. J. The defendant, Tillie Shoars, was convicted in the district court of Cass county of the crime of receiving stolen property, knowing the same to be stolen, with intent to deprive the owner thereof. There was a motion for a new trial and from the order of the trial judge overruling the motion for a new trial, the defendant appeals.

In the motion for a new trial the defendant specified as error certain instructions of the trial court, but such instructions cannot be considered by this court for the reason that appellant did not file exceptions 'to the instructions within twenty days as provided by § 10,824, Comp. Laws 1913. The instructions in the case at bar were oral and said § 10,824 provides that:

"If the charge of the court, or any part thereof, is given orally, the same must be taken down by the official stenographer and shall be deemed excepted to by the defendant, and the same as soon as may be after the trial must be written out at length and filed with the clerk of the court by the stenographer thereof; provided, that in case the defendant is acquitted by the jury the oral instructions need not be transcribed or filed with the clerk. *But exceptions in writing to any of the instructions of the court in any manner given, or the refusal of the court to give instructions requested, may be filed by the defend-*

*ant at his discretion, with the clerk of the court within twenty days after the instructions are all filed as herein provided."*

Under § 10,825, Comp. Laws 1913:

"The court may, in its discretion, submit the written instructions which it proposes to give to the jury, to the counsel in the case for examination, and require such counsel after a reasonable examination thereof, to designate such parts thereof as he may deem objectionable, and such counsel must thereupon designate such parts of such instructions as he may deem improper, and thereafter only such parts of said written instructions so designated shall be deemed excepted to, or subject to exception."

It is clear from these sections that it is the intent of the law that all objections to the instructions to the jury by the trial court in a criminal case must be preserved by exceptions or they are waived. If the instructions are written and the trial judge submits them to counsel with a reasonable time for examination, and counsel does not except to the instructions or any part thereof, all objections are waived. If the trial judge does not submit the instructions to the counsel, exceptions may be filed any time within twenty days from the filing of the instructions in the office of the clerk of the district court.

In the case of State v. Reilly, 25 N. D. 342, 141 N. W. 720, this court said: "Exceptions to an oral charge are required to be filed within twenty days and unless so filed the right thereto will be waived."

It is appellant's contention that the verdict was contrary to law and clearly against the evidence in the case, in that it did not show guilt or knowledge on the part of the defendant, nor did it show or prove any intent on her part to deprive the owner thereof as to the property alleged to have been received by her, nor did it identify the property alleged to have been stolen as the property and the same property that it was alleged the defendant received into her possession as such stolen property.

We have carefully examined the record and it is clearly proven that the home of Mrs. J. W. Smith, on North Broadway, Fargo, North Dakota, was burglarized on the night of the 27th of December, or the morning of the 28th, 1928, and that there were taken from the place a large coffee urn, a silver tray, a musical dish, and four books of

phonograph records, and a phonograph, the records being Victor, Columbia and Brunswick records. The phonograph had been taken apart and there were chips of wood and pieces of machinery and smaller parts lying on the floor. The house had been thoroughly ransacked. On the evening of the 27th, the defendant stated to the witness, Mrs. Custard, that she was going to Bemidji. Mrs. Custard packed her grip for her and the defendant left and was not at her home in Fargo after seven o'clock until five o'clock in the morning of the 28th. Mrs. Custard says that she got up at five o'clock to get breakfast for one of the boarders and she heard someone rattle the door which she opened and the defendant was standing there and she came into the house carrying some records and a package on top of the records. "She says, 'take this,' and I says, 'throw it on the table,' and she just pushed it over on the table like that (indicating), and she went in the front room, and she came back, and I says to her, 'what is that,' and she picked it up and she shoved it in the cook stove then, and she says, 'could that be melted,' and I says what is it, and she says, 'well, that' . . . I says, 'I don't know, what is it,' well, she says, 'look and see,' and when I opened it to see what it was, and I says, 'you can't get a fire hot enough to melt that.'" . . . "When she pulled it out of the oven, and laid it on top of the cook stove, I seen what was in it."

Q. How did you see what was in it?

A. We opened it, she and I.

Q. What did you see?

A. It was silver. All I know, she said it was silver. . . . There was a silver plate about that long (indicating).

Q. About fourteen inches, or twelve inches?

A. I don't think over that; it might have been shorter; I couldn't say. . . . There was several other pieces there. . . .

"I just asked her where she got them and she said that it was none of my business." There was no one else present at the time. . . . "I cleaned out the wood box of the wood and the paper and she put it down in the bottom of the wood box." I saw the records there. "I was sitting on the day bed and she was sitting in the rocker calling off the names, and I noticed some of them were Brunswick records, and

Victor records." On cross-examination she said some were Brunswick records, some Victor and I think some Columbia records.

Q. Describe if you will, Mrs. Custard, how large a package it was that contained this silver?

A. Well, I would judge it was about that long, and O, probably that big (indicating) around—might not have been quite that, but there was a lot of paper around it too, but it might have been that big around (indicating); might have been a trifle larger.

This, of course, does not show intelligently to the court the size, but she indicated with her hands or arms apparently the size of the package of silver in the presence of the jury and it was intelligible to it. Mrs. Custard, further testifying, states:

"Q. Describe the contents of the package, the number of pieces and the shapes and form?

A. Just the tray was all, and there was several pieces, long pieces, but I never counted them, because when I said to her to dump them in the wood box there, I says "get them out of sight, before anybody sees them, and get them out of here before I go, because I won't stay here if they are here."

. . .

"Friday afternoon she (meaning the defendant) said to Harry and the two youngest Jones boys, Chubby and Buddy; 'you take this out and dump it, and be sure you put the garbage on that package.' "

Q. That was the same package. A. Yes, sir.
Q. Still bundled up in the paper? A. Yes, sir.
Q. And it went out that way? A. Yes, sir.
Q. And you saw it go? A. Yes, sir.

. . .

Q. What became of the records? A. They were still on the library table when I left there the 15th of January.
Q. At her place? A. Yes, sir.

. . .

Q. Right on the table? Yes, sir.

On Friday, the 28th, I said: "What do you want with these phonograph records with no phonograph, and she says there will be, and the youngest boys says there would have been, if we could have got the damn phonograph out of the door. We had to tear the damn thing to pieces to get it out." This statement was made in the presence of the defendant without any denial on her part and immediately after she had answered the question: "What do you want with these phonograph records with no phonograph," her answer being: "there will be." From the answer of the defendant and the boy the jury might well infer that the defendant meant there would be a phonograph as soon as the phonograph which had been torn to pieces could be put together again. This testimony—what the boy said—corroborates the testimony of the witness for the state that there were chips of wood and slivers, and small parts of the phonograph lying on the floor, but the phonograph itself had been taken. The evidence is very clear that the Smith home was burglarized; a phonograph torn to pieces and removed; a silver tray and a coffee urn taken and a large number of phonograph records, sometime during the night of the 27th or the morning of the 28th of December. The defendant was absent that night and returns at five o'clock in the morning with a silver platter, strips of silver which could have been cut from the coffee urn and the first thing she wants to do is to melt the silver. When she cannot do that she hides it in the wood box and in the afternoon of the same day, she has it taken away and secreted in the garbage. This is the strongest kind of evidence of guilt and while the identity of the articles received with those stolen, must be shown beyond a reasonable doubt, the identity need not be direct and absolute, but circumstantial evidence is admissible to show it. 34 Cyc. 527.

"On a trial for receiving shoes knowing them to have been stolen, testimony by a member of the firm named as the owner of the shoes, that the shoes which had been stolen, were of 'a pattern of the shoes his firm sold,' is admissible in evidence, in connection with other testimony, as tending to show ownership of the shoes as laid in the indictment. Gibbs v. State, 130 Ala. 101, 30 So. 393. . . . It is proper to hand to the witness articles similar to those stolen, to enable him to identify and prove the kind of articles stolen. Jupitz v. People, 34

Ill. 516. On a trial for receiving a sheep and some honey in the comb, evidence that mutton tallow and strained honey were found on defendant's premises is admissible, in connection with evidence that a sheep was killed and honey strained there. Com. v. State, 11 Gray, 60. Upon the trial of a person accused of receiving stolen wool, the evidence of a witness, who had been at defendant's house and seen the fleeces represented to have come from his sheep, as to the kind and weight of the fleeces, is admissible, as it has a tendency in connection with the other evidence showing the kind of wool sold by defendant, to show that the stolen wool was among that sold. People v. Pitcher, 15 Mich. 397. . . . In a prosecution for receiving stolen money, money found in defendant's possession at the time of his arrest is admissible in evidence against him, where corresponding in a general way with that lost by the prosecuting witness, as being of the same denomination. . . . Polin v. State (Tex. Crim. Rep.) 65 S. W. 183."

"Possession by accused of large sums of money after a larceny of money and bills, where he had none before, is competent evidence, in connection with strong independent circumstances tending to show guilt, on an indictment for such larceny, though none of the money is identified as part of that stolen." Com. v. Montgomery, 11 Met. 534, 45 Am. Dec. 227.

"In a prosecution for larceny, where there was evidence that defendant took a $20 gold piece from witness' person while they were together in a room, and defendant was thereupon arrested, further testimony that about half an hour after the arrest the policeman and witness returned to the room, and, upon search, found a $20 gold piece secreted on the dresser, was admissible, although the witness could not identify the particular piece of money as his own." State v. Johnson, 36 Wash. 294, 78 Pac. 903.

"But strict proof of the identity of money is not required. . . . So, where several bills of high denomination were stolen, evidence was received to show that the accused had bills of that sort in his possession after the larceny, though before he had been destitute." Underhill, Crim. Ev. 3d ed. § 465, p. 666, and cases cited.

There was no evidence offered by the defendant, no motion to advise

the jury to acquit and no claim made at the trial that there was not sufficient evidence to submit the case to the jury.

We are of the opinion that all the circumstances and facts as shown were sufficient to submit the case to the jury and that it was a question for them to say whether the evidence showed that the property which the defendant brought to her home so early in the morning, which she tried to destroy the identity of by melting and by finally secreting a part of it in the garbage, was the property stolen from the Smith home, and the order is affirmed.

BIRDZELL, CHRISTIANSON, NUESSLE, and BURR, JJ., concur.

BURKE, Ch. J. In a petition for a rehearing appellant insists that when instructions in a criminal case are oral, they are deemed excepted to, and that it is not necessary to file exceptions within the twenty-day period as provided by the statute. It is true that § 10,824, Comp. Laws 1913 does state, "If the charge of the court, or any part thereof, is given orally, the same must be taken down by the official stenographer and shall be deemed excepted to by the defendant." If the instructions are oral, the defendant has no opportunity of considering and determining whether they are vulnerable to objection, and for his assistance the law steps in and says in effect: You need not except at this time, the instructions are deemed excepted to. This does not make any record, however, upon which error can be predicated, if there is any in the instructions, and so the law steps in again and says: We have excused you from making exceptions at this time, as you had no sufficient opportunity to pass upon the instructions, but you must make your record, and so we give you twenty days in which you are to file your exceptions in the office of the clerk of the district court. The making of exceptions and the filing of the same are two different things, and while oral instructions are deemed excepted to at the time they are given, the exceptions must thereafter be written out and filed within twenty days or they are waived. The petition is denied.

CHRISTIANSON, BIRDZELL, BURR, and NUESSLE, JJ., concur.